VERNON WILLIAMS & SON CONSTRUCTION, INC., Appellant,

v.

The CONTINENTAL INSURANCE COMPANY and Continental Casualty Company, Appellees.

Supreme Court of Tennessee.

Dec. 27, 1979.

D. L. Lansden, Walter H. Crouch, Nashville, for appellant; Waller, Lansden, Dortch & Davis, Nashville, of counsel.

R. B. Parker, Jr., Henry T. Finley, Nashville, for appellees; Parker, Nichol & Finley, Nashville, of counsel.

OPINION

FONES, Justice.

The issue in this case is whether Continental Insurance Company's comprehensive

general liability policy provided coverage to its insured Vernon Williams and Sons Construction Company for its failure to perform a construction contract in a workmanlike manner.

The Williams Company's liability to Mitchell Steel Company for faulty construction of an addition to a warehouse was established in a prior lawsuit that contestant refused to defend upon the ground that its policy provided no coverage for the claims presented by Mitchell Steel.

Mitchell Steel's counter-claim to Williams' suit for the balance due on the contract price, asserted breach of the construction contract in the following particulars:

"(a) The concrete work was not properly designed to carry the load of the building and the crane system.

(b) The building and crane system were not designed by a professional engineer registered in the State of Tennessee.

(c) The warehouse slabs are not eight inches thick.

(d) The work was not done in an orderly and workmanlike manner."

The judgment in favor of Mitchell Steel provided in part:

"That the complainant contracted with the defendant and cross-complainant to design and construct the building involved and thereby obligated itself to do such things as were necessary to determine the weight-bearing capacity of the soil on which the building was to be located in order that the building could be properly designed and constructed.

That the cross-defendant breached the contract in that it failed to ascertain the weight-bearing capacity of the soil and design and properly construct the building.

That as a result of this breach of contract, the south wall of the building and portions of the floor cracked, rendering the building unusable for the purposes for which it was constructed."

This suit by the Williams Company against Continental to enforce the alleged policy obligation to defend and pay Williams liability for work performed in an unworkmanlike manner was dismissed by the trial judge, and his action was affirmed by the Court of Appeals, with one member dissenting. We granted the writ of certiorari because several of our sister states have, in recent decisions, construed similar policies to provide coverage, criticizing the case of *Haugan v. Home Indemnity Co.*, 86 S.D. 406, 197 N.W.2d 18 (1972), relied upon by the Court of Appeals.

I.

The insuring clause of the comprehensive general liability policy provides:

"The company will pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as *damages* because of

A. bodily injury or

B. property damage

to which this insurance applies, caused by an *occurrence*, and the company shall have the right and duty to defend any suit against the *insured* seeking *damages* on account of such *bodily injury* or *property damage*, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements."

The policy defines "property damages" as "injury to or destruction of tangible personal property."

The exclusions relevant to this suit follow:

"This insurance does not apply:

(a) to liability assumed by the *insured* under any contract or agreement except an *incidental contract*; but this exclusion does not apply to a warranty of fitness or quality of the named *insured's products* or a warranty that work performed by or on behalf of the *named insured* will be done in a workmanlike manner;

(k) to *bodily injury* or *property damage* resulting from the failure of the *named insured's products* or work completed by or for the *named insured* to perform the function or serve the purpose intended by the *named insured*, if such failure is due to a mistake or deficiency in any design, formula, plan, specifications, advertising material or printed instructions prepared or developed by any *insured*; but this exclusion does not apply to *bodily injury* or *property damage* resulting from the active malfunctioning of such products or work;

(*l*) to *property damage* to the *named insured's products* arising out of such produced or any part of such products;

(m) to *property damage* to work performed by or on behalf of the *named insured* arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith; "

All of the cases agree that exclusions (k), (*l*), and (m) clearly eliminate coverage for damages confined to the internal defectiveness of the insured's own work product, resulting from defective materials or defective, negligent or unskilled workmanship.

Exclusion (a) is the source of disagreement. Arizona, Florida, and North Dakota appellate courts have held that exclusion (a) *extends* coverage to breach of contract damages for the performance of work in a negligent and unworkmanlike manner because such damages are expressly excepted from the assumption of liability by contract exclusion. *See, e. g., Fontainebleau Hotel Corp. v. United Filigree Corp.*, 298 So.2d 455 (Fla.App.1974); *Federal Insurance Co. v. P.A.T. Homes, Inc.*, 113 Ariz. 136, 547 P.2d 1050 (1976) and *Applegren v. Milbank Mutual Insurance Co.*, 268 N.W.2d 114 (N.D. 1978).

The reasoning of the Florida court in *Fontainebleau* was that exclusion (a) grants coverage and exclusion (m) takes it away, that the two clauses being repugnant, the more specific clause (a) prevails over (m), which is "general in nature."

The Supreme Court of Arizona in *P.A.T. Homes* found ambiguity between exclusions (a) and (*l*). Observing that the South Dakota court in *Haugan* found no ambiguity between exclusions (a) and (*l*) whereas the Florida courts construed the same clauses as being ambiguous, the Arizona court applied the principle of construction that where various jurisdictions reach different conclusions as to the meaning of the language of an insurance contract, ambiguity is established. The Arizona court concluded that the insurer having drafted the policy, the ambiguity should be resolved in favor of the insured.

In *Applegren v. Milbank Mutual Insurance Co., supra*, the Supreme Court of North Dakota side-stepped the question of whether a comprehensive general liability policy covers the cost of correcting faulty workmanship, but reached that result by holding that exclusion (a) created an obligation to defend the insured. Finding that the insurance company had breached its duty to defend a suit predicated on negligent and unworkmanlike performance in breach of a construction contract, the cost of defense and settlement of the suit was imposed upon the insurer. The *Applegren* decision did not rest "primarily on principles of law pertaining to ambiguities in insurance policies," but was bottomed squarely on the proposition that the "exception to an exception" in exclusion (a) operates to grant coverage to an insured's warranty that work would be performed in a workmanlike manner.

In addition to the three cases cited above, Williams relies upon *Weedo v. Stone–E–Brick, Inc.*, 155 N.J.Super. 474, 382 A.2d 1152 (1977). The intermediate appellate court of New Jersey held that exclusion (a) provided coverage for the cost of correcting faulty workmanship, expressly relying upon the reasoning employed in *Fontainebleau* and *P.A.T. Homes* and rejecting the rationale of *Haugan*.

At the time of oral argument of the instant case it was known that the Supreme

Court of New Jersey had granted certification in *Weedo*, but its disposition of the case was not known. In an exhaustive, scholarly, and well-reasoned opinion, that court has reversed and dismissed the insured's action, which asserted coverage for the correction of faulty workmanship. *Weedo v. Stone–E–Brick, Inc. and Pennsylvania National Insurance Co.*, 81 N.J. 233, 405 A.2d 788 (1979).

In brief, the rationale of the *Weedo* decision is that a proper reading of the insuring clause and the "business risk" exclusions [(k), (*l*), and (m) in the Continental policy—(n) and (o) in the Pennsylvania National policy], negate coverage for the contractual liability of the insured-contractor to correct, replace, or repair faulty materials or workmanship; that the interpretation of the "exception" to exclusion (a) as a *grant* of coverage is contrary to the basic principle that coverage is granted in the insuring clause, and that exclusions subtract from coverage, rather than grant it; that the risk intended to be insured by a comprehensive general liability policy is faulty workmanship and materials which cause a tort liability to persons other than those to whom contractual obligation of workmanlike performance is due.

We quote from *Weedo* :

"Under the CGL provisions of the policy in question Pennsylvania National agreed to pay 'on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . bodily injury . . or *property damage to which this insurance applies,* caused by an occurrence . . . .' (Emphasis supplied). This is the standard language found in the great majority of CGL's written in this country. These provisions, developed by casualty rating bureaus over a period of nearly fifty years, have become an established norm of underwriting policy. Tinker, 'Comprehensive General Liability Insurance—Perspective and Overview' 25 *Feder. Ins. Coun. Q.* 217, 218–21 (1975); Henderson, 'Insurance Protection for Products Liability and Completed Operations—What Every Lawyer Should Know,' 50 *Neb.L.Rev.* 415, 418 (1971).

These agreements set forth, in fundamental terms, the general outlines of coverage, e. g., 'for property damage to which this insurance applies.' The qualifying phrase, 'to which this insurance applies' underscores the basic notion that the premium paid by the insured does not buy coverage for all property damage but only for that type of damage provided for in the policy. The limitations on coverage are set forth in the exclusion clauses of the policy, whose function it is to restrict and shape the coverage otherwise afforded. *Capece v. Allstate Ins. Co.*, 88 N.J.Super. 535, 541, 212 A.2d 863 (Law Div.1965); Tinker, *op. cit., supra*, 25 *Feder. Ins. Coun. Q.* at 264." 81 N.J. at 237–38, 405 A.2d at 790.

Also relevant to basic insuring agreements in the standard comprehensive general liability policy is the definition of property damage: "injury to or destruction of tangible property." In *St. Paul Fire and Marine Insurance Co. v. Coss*, 80 Cal.App.3d 888, 145 Cal.Rptr. 836 (1978), the court reached the conclusion that a claim limited to remedying faulty workmanship or materials does not constitute "injury to or destruction of tangible property." We agree.

We return to significant excerpts from *Weedo* :

"The consequence of not performing well is part of every business venture; the replacement or repair of faulty goods and works is a business expense, to be borne by the insured-contractor in order to satisfy customers. See Tinker, *op. cit., supra*, 25 *Feder. Ins. Coun. Q.* at 224; Henderson, *op. cit., supra*, 50 *Neb.L.Rev.* at 441.

There exists another form of risk in the insured-contractor's line of work, that is, injury to people and damage to property caused by faulty workmanship. Unlike business risks of the sort described above, where the tradesman commonly absorbs the cost attendant upon the repair of his faulty work, the accidental injury to property or persons substantially caused

by his unworkmanlike performance exposes the contractor to almost limitless liabilities. While it may be true that the same neglectful craftsmanship can be the cause of both a business expense of repair and a loss represented by damage to persons and property, the two consequences are vastly different in relation to sharing the cost of such risks as a matter of insurance underwriting.

In this regard Dean Henderson has remarked:

'The risk intended to be insured is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself, and for which the insured may be found liable. The insured, as a source of goods or services, may be liable as a matter of contract law to make good on products or work which is defective or otherwise unsuitable because it is lacking in some capacity. This may even extend to an obligation to completely replace or rebuild the deficient product or work. This liability, however, is not what the coverages in question are designed to protect against. The coverage is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained.' [Henderson, *op. cit., supra*, 50 *Neb.L.Rev.* at 441.] 81 N.J. at 239–40, 405 A.2d at 791.

"In this case Stone–E–Brick's interpretation of the policy would result in coverage for repair and replacement of its own faulty workmanship. This interpretation relies on the supposition that the exception to exclusion '(a)'—'but this exclusion does not apply to a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner'—*grants* coverage for claims based on the warranty described. Not so. The contention runs directly counter to the basic principle that exclusion clauses *subtract* from coverage rather than grant

it. Precisely this point was made by the Supreme Court of South Dakota, in construing the very clauses we have before us:

'. . . Exclusion (a) does not extend or grant coverage. To the contrary it is a limitation or restriction on the insuring clause. The exception to exclusion (a) merely removes breach of implied warranty of fitness, quality, or workmanship from the specific exclusion relating to contractual liability. The exception [to clause (a)] remains subject to and limited by all other related exclusions contained in the policy. When considered with exclusion (m) [(o) in the instant case] it clearly appears that property damage claims of third persons resulting from the insured's breach of an implied warranty are covered unless the claimed loss is confined to the insured's work or work product.' [*Haugan v. Home Indem. Co., supra*, 197 N.W.2d at 22.]" 81 N.J. at 247–48, 405 A.2d at 795.

"But what does exclusion '(a)' mean and what is its function? As we have endeavored to make clear, the policy in question does not cover an accident of faulty workmanship but rather faulty workmanship which causes an accident. See *Hamilton Die Cast, Inc. v. United States F. & G. Co.*, 508 F.2d 417, 420 (7th Cir. 1975); *Dreis & Krump Mfg. Co. v. Phoenix Insurance Co.*, 548 F.2d 681, 689 (7th Cir. 1977). Within this structure, contractual liability is excluded under the terms of exclusion '(a)'. The exception to this exclusion insures, however, that claims premised upon quasi-contract or contract by implication, such as warranty actions, will be covered. Such claims must nevertheless be otherwise cognizable under the general grant of coverage in the first instance in order to constitute a claim 'to which this insurance applies.' This analysis of the import of the '(a)' exclusion accords with the generally-held view of other courts, *see, e. g., Carboline Co. v. Home Indem. Co.*, 522 F.2d 363, 366 (7th Cir. 1975) (same construction given

to similar clause in contractual liability policy); *Biebel Bros., Inc. v. United States F. & G. Co., supra,* 522 F.2d [1207] at 1212; *Haugan v. Home Indem. Co., supra,* 197 N.W.2d at 22; *Aetna Insurance Co. v. Pete Wilson Roofing & Heating Co., Inc.,* 289 Ala. 719, 272 So.2d 232, 234–35 (1973) (contractual liability policy construed), and at the same time saves the clear import of the exclusions for 'business risks.' " 81 N.J. at 249–50, 405 A.2d at 796.

We are convinced that the standard comprehensive general liability policy does not provide coverage to an insured-contractor for a breach of contract action grounded upon faulty workmanship or materials, where the damages claimed are the cost of correcting the work itself. The Mitchell Steel counter-complaint against the Williams Company involved that character of claim only, and thus there was no coverage and no duty upon the insurer to defend.

The judgment of the Court of Appeals is affirmed. Costs are adjudged against petitioner.

BROCK, C. J., and COOPER, HENRY and HARBISON, JJ., concur.