**BLAYLOCK AND BROWN CONSTRUCTION, INC. and Norman Brown, III, Plaintiffs–Appellants,**

v.

**AIU INSURANCE COMPANY, Defendant–Appellee.**

Court of Appeals of Tennessee, Western Section, at Jackson.

May 11, 1990.

Application for Permission to Appeal Denied by Supreme Court July 23, 1990.

Henry H. Hancock, Rebecca P. Tuttle, Memphis, for plaintiffs-appellants.

Gary K. Smith, Roane Waring, III, Memphis, for defendant-appellee.

CRAWFORD, Judge.

This case involves coverage under a comprehensive general liability insurance policy. Plaintiff Blaylock and Brown Construction, Inc., is a general contractor engaged primarily in construction of custom homes in the Memphis area, and plaintiff, Norman Brown, III, is its president. Defendant AIU Insurance Company is the insurer under the comprehensive general liability policy.

In March of 1982, Blaylock and Brown entered into a contract with Jack G. Leach for the construction of a home on Lot 2, Eastwood Hills Subdivision, also known as 6425 Cottingham, Memphis, Tennessee. The home of approximately 4,500 square feet was to be constructed pursuant to plans and specifications described in the construction contract and Blaylock and Brown warranted "that all work will be of good quality, free from fault and defects and shall be performed in accordance with usual and acceptable building and construction practices prevailing in Memphis, Shelby County, Tennessee, for the construction of custom-built homes of the type and quality of the residence being constructed under this agreement." Construction was completed in approximately eight months and Leach occupied the home in the latter part of December, 1982. Shortly after Leach moved into the residence it was discovered that there was a structural defect in the construction of the house which resulted in substantial damage to the building. Primarily, the structural defect was related to inadequate support of the concrete floor slab resulting in subsidence or settlement, which in turn caused considerable damage to the main part of the home.

At all times pertinent to this case, Blaylock and Brown and Norman Brown, III, were insured by a comprehensive general liability policy (hereinafter CGL policy) issued by AIU Insurance Company. The policy, as relevant to the controversy before us, provides as follows:

## COMPREHENSIVE GENERAL LIABILITY

### 1. COVERAGE A—BODILY INJURY LIABILITY COVERAGE B—PROPERTY DAMAGE LIABILITY

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

A. bodily injury or

B. property damage

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient,....

\*　　\*　　\*　　\*　　\*　　\*

**Exclusions**

This insurance does not apply:

\*　　\*　　\*　　\*　　\*　　\*

(o) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith; ....

The policy also contained a broad form comprehensive liability endorsement which, as stated on the endorsement, "modifies such insurance as is afforded by the provisions of the policy relating to the ... **COMPREHENSIVE GENERAL LIABILITY INSURANCE.**" Exclusion (o) of the Comprehensive General Liability policy is supplanted by the following language in the endorsement:

(c) with respect to the completed operations hazard and with respect to any classification stated in the policy or in the company's manual as "including com-

pleted operations", to property damage to work performed by the named insured arising out of such work or any portion thereof, or out of such materials, parts or equipment furnished in connection therewith.

\* \* \* \* \* \*

Pertinent definitions as set out in the policy are as follows:

"completed operations hazard" includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured. "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:
(1) when all operations to be performed by or on behalf of the named insured under the contract have been completed.
(2) when all operations to be performed by or on behalf of named insured at the site of the operations have been completed, or
(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.
Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.

\* \* \* \* \* \*

"occurrence" means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured:

\* \* \* \* \* \*

"property damage" means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of the use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

\* \* \* \* \* \*

Leach filed suit against the plaintiffs herein seeking damages resulting from the defects in his home and AIU initially provided a defense to the lawsuit under a reservation of rights. On October 21, 1985, AIU advised plaintiffs that there was no coverage under the policy for the Leach claim and that the defense would be discontinued. Subsequently, settlement of the Leach suit was effected by plaintiff Norman Brown purchasing the house for $450,-000 in order to ascertain the cause of the problem, to correct it, and then resell the home. It was determined that the cause of the problem was a fracture in a drain pipe caused by incorrect posthole placement for floor supports, which was part of the work performed by Mr. Willie Jones, who Brown contends is a concrete subcontractor and who AIU contends is an employee of Blaylock and Brown Construction, Inc.

After AIU discontinued the defense of the Leach lawsuit, plaintiffs Blaylock and Brown Construction, Inc., and Norman Brown, III, filed this declaratory judgment suit against defendant AIU Insurance Company, seeking a declaration that AIU's policy provided coverage for the defense of the Leach lawsuit and for the damages sought thereby.

AIU's answer joins issue on the material allegations of the complaint, and generally denies that plaintiffs have coverage for the Leach claim under the terms and provisions of the AIU insurance policy.

After the Leach lawsuit was settled, plaintiffs were allowed by order of court to file an amended complaint which generally restates the allegations of the original complaint and further alleges that the Leach lawsuit was settled and that plaintiffs have

incurred losses, attorney fees, and other expenses. The complaint seeks damages in the amount of $250,000 in addition to penalties for bad faith pursuant to T.C.A. § 56–7–105. Defendant's answer to the amended complaint denies the material allegations therein and joins issue thereon and again denies that AIU's policy provides coverage for plaintiffs as alleged.

At the conclusion of the non-jury trial, the court took the matter under advisement and subsequently entered an order of judgment which provides as follows:

This cause came on to be heard on the 31st day of October, 1988, before the Honorable Charles O. McPherson, Judge of Division 2 of the Circuit Court of Tennessee, for the Thirtieth Judicial District at Memphis, upon the Complaint of the Plaintiffs, Answer of the Defendant, witnesses for the respective parties and the entire record in the cause from all of which it appears to the Court that the Defendant did not owe the Plaintiffs either a defense to the original action filed against them or any coverage for the claimed damage under the policy and that, therefore, the Plaintiffs' Complaint should be dismissed with prejudice upon the merits and judgment entered accordingly in favor of the Defendant, and,

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED:

1. That the Plaintiffs' Complaint should be and hereby is dismissed with prejudice upon the merits and judgment entered in favor of the Defendant.

2. That the costs of the cause are assessed against the Plaintiffs.

Plaintiffs have appealed and the dispositive issue on appeal is whether the trial court erred in holding that the AIU policy did not provide plaintiffs coverage for defense and indemnity in connection with the Leach claims.

■ Insurance contracts like other contracts should be construed so as to give effect to the intention and express language of the parties. *Interstate Life & Acc. Ins. Co. v. Gammons*, 56 Tenn.App. 441, 408 S.W.2d 397 (1966). In construing and applying insurance policies, the appar-

ent object and intent of the parties must be kept in mind. *Dempster Bros., Inc. v. U.S. Fidelity & Guaranty Co.*, 54 Tenn.App. 65, 388 S.W.2d 153 (1964). Language in a contract which happens to be technical or complex to the layman, does not render it ambiguous, *Bartlett v. Philip–Carey Manufacturing Co.*, 216 Tenn. 323, 330, 392 S.W.2d 325, 328 (1965), and where there is no ambiguity it is the duty of the court to apply to the words used their usual, natural and ordinary meaning. *Ballard v. North American Life & Casualty*, 667 S.W.2d 79, 82 (Tenn.App.1983). The court cannot, under the guise of construction, make a new and different contract for the parties. *United States Stove Corp. v. Aetna Life Ins. Co.*, 169 Tenn. 264, 267, 84 S.W.2d 582, 583 (1935).

■ Counsel for the parties have filed excellent briefs espousing their respective positions, and have ably argued this case before the Court. While they have widely divergent views on the coverage afforded by the policy in question, they do agree that interpretations of the coverage afforded have been somewhat less than unanimous.

Plaintiffs contend that, by virtue of the Broad Form Property Damage Liability Coverage (Including Completed Operations) endorsement, the plaintiffs have liability coverage as the insured general contractor for property damage to work performed by the general contractor and to work performed by a subcontractor, when the property damage arises out of the work of another subcontractor. Plaintiffs' position is that exclusion (*o*) of the comprehensive General Liability policy excluded from coverage property damage to work performed by the general contractor or by subcontractors when the damage arises out of the work of the general contractor or of a subcontractor. Plaintiffs further contend that exclusion (*o*) was replaced by exclusion (c) of the Broad Form Property Damage Liability Coverage (Including Completed Operations) endorsement which does not include the words "on behalf of." Because of the deletion of the words "on behalf of" plaintiffs conclude that coverage is not ex-

cluded, under the broad form property damage endorsement, for property damage to work performed by the general contractor or by a subcontractor when the damage arises out of the work of another subcontractor.

Plaintiffs state in their brief:

Plaintiffs' position, simply stated, is that BFPD exclusion (c) provides coverage for the property damage which occurred to the Leach house which was constructed either by Blaylock and Brown itself, the insured, or on Blaylock and Brown's behalf by its subcontractors because the damages arose out of the faulty workmanship of one of Blaylock and Brown's subcontractors, the concrete subcontractor, Willie Jones. Plaintiffs' position regarding the distinction between the broader coverage provided by BFPD exclusion (c) and the restrictive coverage of CGL exclusion (o) is supported by writers and authorities in the insurance industry who have interpreted the meaning of such policies and enlightened courts which have considered the effect of the Broad Form Property Damage Liability Coverage (Including Completed Operations) endorsement in recent decisions.

Plaintiffs place great reliance on the case of *Fireguard Sprinkler Systems v. Scottsdale Insurance*, 864 F.2d 648 (9th Cir. 1988). Based on the language of the policy and the insurance industry's interpretation of the exclusions, the Court in that case held that the insurance company intended to cover losses caused by work of subcontractors.

In *Fireguard*, an insured general contractor filed a declaratory judgment suit seeking a declaration that its insurer, under a comprehensive general liability policy was required to defend a suit against it by the property owner for damages to the property constructed pursuant to the contract between the property owner and the general contractor. The general contractor, Fireguard, had a contract with the owner to upgrade the fire sprinkling system in the owner's property and the project included construction and installation of a water reservoir tank. Fireguard's subcontractor constructed the water reservoir tank and, after the project was completed and the system was put into operation, a landslide destroyed the tank and other portions of the project. The owner sued Fireguard and others for negligence and breach of contract. Fireguard filed the instant suit when its insurance carrier entered a defense in its behalf under a reservation of rights. The district court held that there was no coverage under the policy and granted summary judgment to the insurer.

The insurance policy considered in *Fireguard* is practically identical to the policy in the instant case and the primary issue on appeal was whether the exclusion under the Broad Form Property Damage Liability Coverage (Including Completed Operations) excludes coverage or damage to the work product when the damage is caused by the work performed by a subcontractor. The court noted that the deletion of the phrase "or on behalf of" in the replacement exclusion is critical to the interpretation of the policy. Fireguard interpreted the deletion in the exclusion to mean that the policy will not cover damage to work Fireguard performed, but will cover damage to work the subcontractors performed. *Id.* at 650, 651. Fireguard argued and the court agreed that the correct interpretation is that the policy provides coverage because:

"(1) the exclusion applies only to work performed "by the named insured" and it alone is the named insured; (2) the phrase "or on behalf of" would have included subcontractors' work if included in the endorsement, but its omission limits the exclusion to the named insured's work; and (3) the deletion in section VI(A)(3) of the endorsement was deliberate, because "on behalf of" appears in the immediately preceding paragraphs, sections VI(A)(1) and (2), of the endorsement."

*Id.* at 651.

The court relied upon several insurance industry publications which interpreted the policy language to be in accord with Fireguard's argument and the court noted that the district court, in holding that there was

no coverage, relied upon cases from Minnesota which interpreted the policy provision contra to the insurance industry interpretation. The court reversed the district court and held that the language of the policy and the insurance industry's interpretation of the exclusions involved indicated that the insurance company intended to cover losses to the work product of the general contractor arising out of the work of a subcontractor. For a similar holding, see *Mid–United Contractors, Inc. v. Providence Lloyds Ins. Co.,* 754 S.W.2d 824 (Tex.App. Fort Worth 1988).

The holding of the court in *Fireguard* is similar to statements in the Fire, Casualty and Surety Bulletins published by the National Underwriter Company:

> When an insured purchases Broad Form Property Damage (Including Completed Operations) coverage, one effect is that exclusion (*o*) is deleted and replaced by an exclusion of "property damage to work performed by the named insured arising out of such work or any portion thereof, or out of such materials, parts or equipment furnished in connection therewith." This is a deletion of the wording "or on behalf of" from exclusion (*o*).
>
> The meaning of this deletion is to restrict the exclusion's operation to property damage *to* the insured's own work that *arises* out of the insured's own work. By this interpretation, a general contractor would be covered for damage to work performed by itself or any other contractor if the damage arose out of another contractor's work on the project. And, even if damage arose out of the insured's own work, the insured would be covered for damage to work performed by any contractor other than itself.

*F C & S Bulletins,* Casualty and Surety Volume, subject: Public Liability, February, 1989, p. Prf.–12 (emphasis in original).

The view expressed by the F C & S Bulletin is also the interpretation accorded the policy by some writers in the field. Jack P. Gibson, President and Managing Editor of International Risk Management Institute, Inc., of Dallas, Texas, states in his reference manual *Broad Form Property Damage Coverage: Analysis, Application and Alternatives,* (2d Ed.1982):

> The Following Applies to Exclusion (z) of Advisory Endorsement 3006—Broad Form Property Damage Endorsement (Including Completed Operations)
>
> (z) With respect to the completed operations hazard and with respect to any classification stated above as "including completed operations" to property damage to work performed by the named insured arising out of the work or any portion thereof, or out of materials, parts, or equipment furnished in connection therewith.

This exclusion in Advisory Endorsement 3006, which modifies the corresponding policy exclusion (*o*), provides completed operations property damage coverage by excluding only damages to the named insured's work arising from his work. In other words, property damage to the work of others such as sub-contractors and other general contractors would be covered.

Thus, completed operations coverage would apply as follows:

(1) the insured would have no coverage for damage to his work arising out of his work.

(2) the insured would have coverage for damage to his work arising out of a subcontractor's work.

(3) the insured would have coverage for damage to a subcontractor's work arising out of the subcontractor's work.

(4) the insured would have coverage for damage to a subcontractor's work, or if the insured is a subcontractor to a general contractor's work or another subcontractor's work, arising out of the insured's work.

＊　　＊　　＊　　＊　　＊　　＊

Exclusion (*o*) Workmanship:

(*o*) To property damage to work performed by or on behalf of the named insured arising out of work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

Exclusion (o) is designed to preclude coverage for faulty workmanship performed by or on behalf of the named insured. When the BFPD endorsement is not attached to the CGL policy, there is no coverage for property damage to the contractor's or subcontractor's work arising from their work during the course of construction or once operations are completed. In addition, the exclusion applies to property damage arising from any materials, parts, or equipment furnished with the work. There would be coverage, assuming completed operations coverage is purchased, for the property of the owner that is not the work of the insured (e.g. furniture, fixtures, etc.) for the property of others (e.g., adjacent building, etc.) which is damaged by a completed operations loss.

Exclusion (o) is replaced by the BFPD endorsement. Therefore, when the BFPD endorsement is in place, exclusion (o) should be ignored and the appropriate exclusions of the BFPD endorsement inserted in its place. In exclusion (x) of the BFPD 3005, exclusion (o) is repeated exactly as contained in the CGL policy except that it is clarified to apply only to the completed operations hazard. Exclusion (o) is also repeated in exclusion (z) of ADV. 3006, however, the words "or on behalf of" are omitted. This gives the insured contractor completed operations coverage for damage to the work of other contractors or subcontractors.

See also for similar interpretation Sanborn, David M., "The Workmanship Exclusion", *Independent Agent* (February, 1979, pp. 35–36); Sanborn, David M., "Workmanship Exclusions—2", *Independent Agent* (March 1979) page 32–33 Paris, Stephen J., "CGL Policies: Completed Operations and Broad Form Coverage", DRI Defense Practice Seminar; *Construction Failures: Insurance and Bonding Issues*, Toronto, Canada, June 5–6, 1986, p. E–18 thru E–19.

The defendant, AIU Insurance Company, has two arguments. Initially, AIU contends that the damages to the Leach home do not constitute "property damage" as defined under the policy and therefore, because affirmative coverage is not provided by the policy, any exclusions from coverage are irrelevant. Alternatively, AIU contends that exclusion (c) in the broad form property damage endorsement does not extend coverage to damages resulting from the work of a subcontractor.

In support of its position with respect to "property damage" covered by the policy, AIU cites *Vernon Williams & Son v. Continental Ins. Co.*, 591 S.W.2d 760 (Tenn. 1979), where the insured, a construction contractor, sued his insurer under a comprehensive general liability policy to enforce the insurer's alleged obligation to defend and to pay indemnity in a suit brought by a contracting property owner for faulty construction. The insuring clause and the policy definitions are practically identical to the provisions of the policy in the instant case, but there is no indication that the broad form property damage coverage was involved. The definition of property damage in the policy, as in the instant case, is: "injury to or destruction of tangible property." *Id.* at 763. Our Supreme Court held that a claim limited to remedying faulty workmanship or materials does not constitute "injury to or destruction of tangible property." *Id.* at 763. The Court also held, following *Weedo v. Stone-E-Brick, Inc.*, 155 N.J.Super. 474, 382 A.2d 1152 (1977), "that the risk intended to be insured by a comprehensive general liability policy is faulty workmanship and materials which cause a tort liability to persons *other* than those to whom contractual obligation of workman-like performance is due." *Id.* at 763. (Emphasis supplied).

In the case at bar, Blaylock and Brown sought to have AIU defend them in a suit brought by a contracting property owner which was grounded upon, inter alia, breach of contract, breach of warranty and negligence and sought damages resulting from the construction performed under the contract between Blaylock and Brown and the property owner. To this extent, and to the extent that the same definition of property damage is used in the policies, this case is factually identical to *Williams*. We

are therefore constrained to agree that the coverage for property damage provided by the standard comprehensive general liability policy does not extend coverage to an insured-contractor for a breach of contract action such as this.

With respect to the exclusion provisions of the Comprehensive General Liability policy and the broad form property damage endorsement, the defendants rely on a line of cases which hold contra to *Fireguard.* These cases precluded coverage under provisions similar to those in the instant case because the damages which the contracting property owner sought to have rectified were business risks to be borne by the general contractor.

In *Bor–Son Building Corp. v. Employers Commercial Union,* 323 N.W.2d 58 (Minn.1982), the court quoted with approval from *Vernon Williams & Son* as follows:

> We are convinced that the standard comprehensive general liability policy does not provide coverage to an insured-contractor for a breach of contract action grounded upon faulty workmanship or materials, where the damages claimed are the cost of correcting the work itself.

323 N.W.2d at 64. In holding that the building owner's suit against the general contractor alleging damages caused by faulty workmanship and materials is not within the coverage of the policy, the Court said:

> ... Its damages resulted from faulty workmanship in the performance of the contracts. This liability on the part of the contractor is not within the coverage of the contractor's general liability policy. *See* Henderson, *Insurance Protection for Products Liability and Completed Operations—What Every Lawyer Should Know,* 50 Neb.L.Rev. 415, 441 (1971):
>
> "The risk intended to be insured is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to the property other than to the product or completed work itself, and for which the insured may be found liable. The insured, as a source of goods or

services, may be liable as a matter of contract law to make good on products or work which is defective or otherwise unsuitable because it is lacking in some capacity. This may even extend to an obligation to completely replace or rebuild the deficient product or work. This liability, however, is not what the coverages in question are designed to protect against. The coverage is for tort liability for physical damage to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained.

323 N.W.2d at 63.

In *Knutson Construction Company v. St. Paul Fire and Marine Insurance Company,* 396 N.W.2d 229 (Minn.1986), the general contractor of an apartment building brought a declaratory judgment action to require its insurer to defend and indemnify it in a suit brought by the owner of the completed apartment building for alleged damage to the building resulting from the construction. The trial court, relying on *Bor–Son Building Corp. v. Employers Commercial Union,* 323 N.W.2d 58 (Minn. 1982), granted summary judgment to the insurer and the Court of Appeals affirmed. In the Supreme Court, the general contractor argued that *Bor–Son* is distinguishable from the case before the court because the *Bor–Son* court did not consider the effect of a broad form property damage endorsement for completed operations, which is a part of the comprehensive general liability policy in the case. In affirming the lower court, the Supreme Court responded to this argument as follows:

> But does the existence of the BFPD endorsement in these policies, as appellant contends, operate to provide coverage that would otherwise be excluded under the CGL policy for the claims made by Rivergate? Consistent with *Bor–Son,* we hold it does not.
>
> Appellant asserts that we did not address the BFPD endorsement in *Bor–Son,* and therefore "the entire analysis of the opinion and all the authority it cites is outdated, obsolete, and of no application." Appellant is in error. We did consider

Knutson's BFPD contention and there rejected it. The issue was raised in the *Bor–Son* briefs as well as in the petition for rehearing. We rejected that claim in *Bor–Son* because the general contractor was fully responsible for all phases of the project—even though there it had subcontracted *all* of the work on the project. Here, Knutson retained portions of the work for itself. Nevertheless, in both instances, the structure became the contractor's product.

Notwithstanding our rejection of similar assertions raised in *Bor–Son*, appellant Knutson argues that the removal of the words "or on behalf of" in the work performed exclusion from the BFPD exclusion expands coverage to include coverage for the claims now being asserted against Knutson by Rivergate.

In some construction projects, the general contractor has overall responsibility in control of the construction of the building. In *Bor–Son* that exclusive control and responsibility was considered decisive. On other construction projects, the so-called general contractor has something less than overall control of the work of subcontractors. *See, e.g., Ohio Casualty Insurance Co. v. Terrace Enterprises, Inc.*, 260 N.W.2d 450 (Minn. 1977). Here, however, as in *Bor–Son*, Knutson, by contract, undertook to furnish all materials and labor. It had responsibility for all construction work—its own as well as its subcontractors. It had "effective control" over all project work and materials, including those provided by subcontractors. When the completed project is turned over to the owner by the general contractor, all of the work performed and materials furnished by subcontractors merges into the general contractor's product—a product it has contracted to complete in a good workmanlike manner. Thereby it incurred the business risk of liability arising from its failure to fulfill that contractual obligation. Thus, whether the work was "done by" or "on behalf of" the general contractor is irrelevant to the analysis. The completed product is to be viewed as a whole, not as a "grouping" of component parts. The CGL policy excludes

damage to the product for the exact public policy reasons hereinbefore discussed. Slight difference in wording in the work performed exclusion in the BFPD endorsement does not affect this exclusion. (Emphasis in original).

396 N.W.2d at 236–237. For similar results, see *Tucker Construction Co. v. Michigan Mutual Insurance Co.*, 423 So.2d 525 (Fla.App.1982), *J.G.A. Construction Corp. v. Charter Oak Fire Insurance Co.*, 66 A.D.2d 315, 414 N.Y.S.2d 385 (1979).

After considering the authorities referred to herein, we believe the better-reasoned interpretation of these provisions is that which is adopted by the Minnesota Supreme Court in *Knutson*, 396 N.W.2d 229. We believe the holding in *Knutson* concerning the effect of the Broad Form Property Damage Coverage (Including Completed Operations) would be the interpretation placed upon the policy by our Supreme Court in view of its decision in *Vernon Williams & Son*, 591 S.W.2d 760 (Tenn.1979).

Exclusion (c) in the broad form property damage coverage excludes coverage "to property damage to work performed by the named insured arising out of such work" We must determine what is the "work performed by the named insured." In the instant case, the named insured is the general contractor and work performed by the insured must necessarily be such work as the named insured is required to perform under the construction contract. How the insured performs the work is a matter for its decision in the exercise of sound business practice. The contractor can employ subcontractors or use employees to do the work, but in the end, when the work is completed, all the work called for by the contract on the part of the contractor must be deemed to be work performed by the contractor. We hold that the language of the policy excludes liability coverage for the plaintiffs for damage to the property constructed pursuant to the contract.

█ Appellants have also presented for review the issue of whether the trial court erred in denying plaintiffs-appellants' motion to compel AIU to produce its file pertaining to plaintiffs-appellants' claim and AIU's denial of coverage.

Plaintiffs moved the trial court to compel production of the AIU file, and upon AIU's objection the file was submitted to the court for an *in camera* inspection. The trial court allowed disclosure of some of the contents of the file, but apparently plaintiffs-appellants complain of the trial court's action in not allowing the production of correspondence from counsel retained by the insurance company to represent plaintiffs in the underlying action filed against the plaintiffs.

Clearly, AIU hired an attorney to represent its insured in an action against the insured. In these circumstances, the attorney is the attorney for the insured. *Formal Ethics Opinion* 85–F–100 (9/30/85). Thus, correspondence from the attorney to the insurance company and from the insurance company to the attorney is controlled by the attorney-client privilege between the insured and the attorney. AIU concedes that plaintiff-appellants have the right to this type correspondence. Generally, a party can obtain discovery of any matter not privileged which is relevant to the subject matter of the suit. Rule 26.02 Tenn.R. Civ.P. In this case, the correspondence between the retained counsel for plaintiffs-appellants in the underlying action and AIU could be relevant and is not privileged insofar as AIU is concerned. However, we have examined the file, which was placed under seal by the court, and find nothing relevant to the question under consideration by the trial court. Although the court erroneously excluded such correspondence, it is harmless error. See Rule 36(b).

In view of our decision on these issues, we pretermit consideration of the remaining issues.

The judgment of the trial court is affirmed and this case is remanded to the trial court for such further proceedings as may be necessary. Costs of appeal are assessed against the appellants.

TOMLIN, P.J. (W.S.), and FARMER, J., concur.