# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
January 2000 Session

## BLAKE INDUSTRIES, INC. v. GENERAL AGENTS INSURANCE COMPANY OF AMERICA

### Appeal from the Chancery Court for Davidson County
### No. 98-3253-I    Irvin H. Kilcrease, Chancellor

---

### No. M1999-01891-COA-R3-CV - Filed July 27, 2000

---

In this declaratory judgment action, the appellant has appealed to the Court from the order of dismissal entered in the trial court. Specifically, the trial court found that the insurance contract between the plaintiff/appellant and the defendant/appellee, a commercial insurance company, excluded from coverage liability for damage sustained as a result of the plaintiff/appellant's workmanship. For the reasons stated herein, we affirm the trial court's order.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; and Remanded

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY K. LILLARD, J., joined.

Matthew R. Zenner, Nashville, Tennessee, for appellant, Blake Industries, Inc.

James I. Pentecost, Jackson, Tennessee, for appellee, General Agents Insurance Company of America, Inc.

### OPINION

Blake Industries, Inc., (hereinafter, "Blake"), is a company that installs and services water treatment equipment. On May 5, 1996, Blake purchased a commercial general liability insurance policy (hereinafter, "CGL policy"), from General Agents Insurance Company of America, Inc., (hereinafter, "GAINSCO"). The policy was to run from May 5, 1996, until May 5, 1997.

Policy provisions relevant to the case are as follows:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

. . . .

## COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement.

   a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. . . .

   . . . .

2. Exclusions.
   This insurance does not apply to:

   . . . .

   j.    "Property damage" to:

      . . . .

      (5)    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
      (6)    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

      . . . .

   k. "Property damage" to "your product" arising out of it or any part of it.

   l. "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

The policy also included the following endorsement:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

This insurance does not apply to "bodily injury" or "property damage" included within the "products - completed operations hazard."

Pertinent definitions set forth in the policy are as follows:

5.      "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:
   a.      It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
   b.      You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

   a.      The repair, replacement, adjustment or removal of "your product" or "your work;" or
   b.      Your fulfilling the terms of the contract or agreement.

. . . .

11.a.    "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

   (1)      Products that are still in your physical possession; or
   (2)      Work that has not yet been completed or abandoned.

b.      "Your work" will be deemed completed at the earliest of the following times:
   (1)      When all of the work called for in your contract has been completed.
   (2)      When all of the work to be done at the site has been completed if your contract calls for work at more than one site.
   (3)      When that part of the work done at a job site has been put to its intended use by any person or organization

other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

. . . .

12. "Property damage" means:
   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
   b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

. . . .

14. "Your product" means:
   a. Any goods or products other than real property, manufactured, sold, handled, distributed or disposed of by:
      (1) You;

. . . .

15. "Your work" means:
   a. Work or operations performed by you or on your behalf; and
   b. Materials, parts or equipment furnished in connection with such work or operations.

On or about January 27, 1997, Blake installed a water softener system in the home of Blaze and Gina Wattenbarger. On February 17, 1997, the Wattenbargers reported a water leak which Blake promptly repaired. Nonetheless, the leak caused considerable damage to the Wattenbarger's home. The Wattenbargers filed suit in the General Sessions Court of Davidson County seeking more than $9,000 in damages to their home. The Wattenbargers sought indemnification for damages caused to their home by (1) Blake's negligence; (2) breach of express warranty; (3) breach of the implied warranty of merchantability; and (4) breach of the implied warranty for a particular purpose. The Wattenbargers' lawsuit was appealed to the Circuit Court for Davidson County, ***Blaze and Gina Wattenbarger v. Blake Water Treatment Technologies***, Davidson County Circuit Court No. 98C-1816. That case eventually settled.

During the pendency of the Wattenbargers' lawsuit, Blake made demands upon GAINSCO to indemnify and/or defend Blake. The insurance company declined to provide coverage. Blake subsequently filed a declaratory judgment action in the Davidson County Chancery Court on October 30, 1998. GAINSCO responded by filing a consolidated motion to dismiss, motion for judgment on the pleadings and an answer. Blake then filed a motion for partial summary judgment on the issue of GAINSCO's duty to defend Blake in the Wattenbargers' case. On May 13, 1999, the Chancery Court entered a judgment in favor of GAINSCO and dismissed Blake's lawsuit. Blake timely filed the notice of appeal on May 17, 1999. The appeal has been perfected and is properly before this Court for consideration and disposition.

In considering the appeal of a Rule 12.02(6) Tenn.R.Civ.P. motion to dismiss, the Court of Appeals is required to take the allegations of the complaint as true and to construe the allegations liberally in favor of the plaintiff. *Pemberton v. American Distilled Spirits Co.*, 664 S.W.2d 690, 691 (Tenn.1984). Since this appeal is before the Court of Appeals on a question of law, the scope of the review is *de novo* with no presumption of correctness for the trial court's conclusion. *Montgomery v. Mayor of the City of Covington*, 778 S.W.2d 444, 445 (Tenn. Ct. App.1988). A motion to dismiss pursuant to Rule 12.02(6) for failure to state a claim upon which relief can be granted is the equivalent of a demurrer under our former common law procedure and, thus, is a test of the sufficiency of the leading pleading. *Humphries v. West End Terrace, Inc.*, 795 S.W.2d 128, 130 (Tenn. Ct. App.1990). Such a motion admits the truth of all relevant and material averments contained in the complaint but asserts that such facts do not constitute a cause of action. *Id.* However, admissions of this nature, made solely in connection with the motion to dismiss, do not constitute admissions chargeable to the proponent of the motion for purposes of the litigation as a whole. *Anthony v. Tidwell*, 560 S.W.2d 908, 910 (Tenn.1977). A complaint should be dismissed for failure to state a claim if it appears beyond doubt that plaintiff can prove no set of facts in support of its claim that would entitle him to relief. *Pemberton*, 664 S.W.2d at 691. *Coulter v. Hendricks*, 918 S.W.2d 424, 425-26 (Tenn. Ct. App. 1995).

Insurance contracts like other contracts should be construed so as to give effect to the intention and express language of the parties. *Interstate Life & Acc. Ins. Co. v. Gammons*, 56 Tenn.App. 441, 408 S.W.2d 397 (Tenn. Ct. App. 1966). In construing and applying insurance policies, the apparent object and intent of the parties must be kept in mind. *Dempster Bros., Inc. v. U.S. Fidelity & Guaranty Co.*, 54 Tenn.App. 65, 388 S.W.2d 153 (Tenn. Ct. App. 1964). Language in a contract which happens to be technical or complex to the layman, does not render it ambiguous, *Bartlett v. Philip-Carey Manufacturing Co.*, 216 Tenn. 323, 330, 392 S.W.2d 325, 328 (Tenn. 1965), and where there is no ambiguity it is the duty of the court to apply to the words used their usual, natural and ordinary meaning. *Ballard v. North American Life & Cas. Co.*, 667 S.W.2d 79, 82 (Tenn. Ct. App.1983). The court cannot, under the guise of construction, make a new and different contract for the parties. *United States Stove Corp. v. Aetna Life Ins. Co.*, 169 Tenn. 264, 267, 84 S.W.2d 582, 583 (Tenn. 1935). *See also Blaylock and Brown Const., Inc. v. AIU Ins. Co.*, 796 S.W.2d 146, 149 (Tenn. Ct. App. 1990).

Each party has analyzed the various provisions and definitions of the CGL policy in order to construe the policy in their favor. As a practical matter, GAINSCO need only establish that one relevant policy provision permitting exclusion applies to the facts of this cause in order to prevail. Indeed, after exhaustive analysis of the policy, we conclude that the policy does exclude coverage for the underlying claim.

Both parties have relied upon ***Vernon Williams & Son Construction, Inc. v. Continental Insurance Co.***, 591 S.W.2d 760 (Tenn. 1979), in which the Tennessee Supreme Court addressed whether the CGL policy at issue provided coverage to Vernon Williams & Sons Construction for its failure to perform a construction contract in a workmanlike manner. It is apparent that the insurance policy at issue in the ***Williams*** case contained substantially similar provisions regarding exclusions as that contained in the CGL policy before this Court. In it analysis, the ***Williams*** court stated:

> All of the cases agree that [the relevant exclusions] clearly eliminate coverage for damages confined to the internal defectiveness of the insured's own work product, resulting from defective materials or defective, negligent or unskilled workmanship.

***Id.*** at 762.

The ***Williams*** court found that "the policy in question does not cover an accident of faulty workmanship but rather faulty workmanship which causes an accident." ***Id.*** at 764. The Tennessee Supreme Court concluded "that the standard comprehensive general liability policy does not provide coverage to an insured-contractor for a breach of contract action grounded upon faulty workmanship or materials, where the damages claimed are the cost of correcting the work itself." ***Williams***, 591 S.W.2d at 765.

In light of the foregoing, Blake asserts that exclusions (k) and (l) of the GAINSCO policy do not exclude coverage in this instance because the damage claimed was collateral damage to the Wattenbargers' home which is not confined to the costs of correcting the work itself. Simply stated, because the Wattenbargers claimed water damage throughout their home, exclusions (k) and (l) do not apply. Moreover, Blake argues that exclusion (j) does not apply because the damage claimed was collateral to and outside of the water softener and the particular part of the property on which Blake worked.

Since the ***Williams*** case was issued, this Court has had the opportunity to address a CGL policy such as the one at issue in ***Blaylock and Brown Construction, Inc. v. AIU Insurance Co.***, 796 S.W.2d 146 (Tenn. Ct. App. 1990). ***Blaylock*** presented the Court with a substantially similar factual and legal scenario to the case at bar. In ***Blaylock***, the construction company built a custom home. After completion of the project, the owner discovered a structural defect in the foundation that resulted in considerable damage to the home. The CGL policy in ***Blaylock*** contained a broad form property damage endorsement which excluded coverage for "property

damage to work performed by or on behalf of the named insured arising out of such work or any portion thereof, or out of such materials, parts or equipment furnished in connection therewith." *Id.* at 147-48. The Court concluded:

> In the case at bar, Blaylock and Brown sought to have AIU defend them in a suit brought by a contracting property owner which was grounded upon, inter alia, breach of contract, breach of warranty and negligence and sought damages resulting from the construction performed under the contract between Blaylock and Brown and the property owner. To this extent, and to the extent that the same definition of property damage is used in the policies, this case is factually identical to *Williams*. We are therefore constrained to agree that the coverage for property damage provided by the standard comprehensive general liability policy does not extend coverage to an insured-contractor for a breach of contract action such as this.

*Id.* at 152-153.

As in *Williams* and as in *Blaylock*, the GAINSCO CGL policy at issue before us defines "property damage" to include "[p]hysical injury to tangible property." Moreover the CGL policy in the instant case specifically excludes:

> j.     "Property damage" to:
>        . . . .
>
>        (5)     That particular part of real property on which you or
>                any contractors or subcontractors working directly
>                or indirectly on your behalf are performing
>                operations, if the "property damage" arises out of
>                those operations; or
>        (6)     That particular part of any property that must be
>                restored, repaired or replaced because "your work"
>                was incorrectly performed on it.

It is apparent that the Wattenbargers' claims were grounded in contract and arose out of Blake's attempt to fulfill its agreement to install a water softener system. In light of this Court's holding in *Blaylock*, we conclude that GAINSCO's CGL policy excludes coverage for damages sustained by Blake as a result of the installation of the water softener system at the Wattenbarger home. To hold otherwise would make the insurer a guarantor of the insured's performance. *J.Z.G. Resources, Inc. v. King*, 987 F.2d 98, 103 (2nd Cir. 1993).

Moreover, the GAINSCO's policy and an endorsement included therein expressly exclude coverage for property damage included within the products-completed operations hazard. Specifically, the policy and endorsement provided:

This insurance does not apply to:

l.       "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

This insurance does not apply to "bodily injury" or "property damage" included within the "products - completed operations hazard."

The GAINSCO policy defined "Products-completed operations hazard" as:

11.a.    "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

       (1)     Products that are still in your physical possession; or
       (2)     Work that has not yet been completed or abandoned.

b.      "Your work" will be deemed completed at the earliest of the following times:

       (1)     When all of the work called for in your contract has been completed.
       (2)     When all of the work to be done at the site has been completed if your contract calls for work at more than one site.
       (3)     When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

Blake completed installation of the water softener system in the Wattenbargers' home on January 29, 1997. The damage occurred on or about February 17, 1997. Clearly, the work had been "completed," as defined in the policy, for nearly three weeks before the incident resulting in damage occurred. In *Butler v. U.S. Fidelity & Guaranty Co.*, 277 S.W.2d 348 (Tenn. 1955), a contractor made repairs and improvements to a residence. After the repairs had been completed,

an occupant fell from the porch after the bannister gave way. In interpreting the insurance policy in *Butler*, the Tennessee Supreme Court found no liability on the part of the insurance company due to the policy's specific exclusion regarding completed work. Based on the precedent of *Butler*, we conclude that GAINSCO is not liable for any damages arising out of the completed work performed by Blake.

Blake also raised as an issue on appeal GAINSCO's failure to defend Blake in regard to the *Wattenbarger* case. An insurer's duty to defend is separate and distinct from the insurer's obligation to pay claims under the policy. *Jackson Housing Auth. v. Auto-Owners Ins. Co.*, 686 S.W.2d 917 (Tenn. Ct. App 1984). An insurer's duty to defend its insured is determined by the allegations made in the pleading filed against the insured. Consequently, the duty to defend is broader than the duty to indemnify. *Drexel Chem. Co. v. Bituminous Ins. Co.*, 933 S.W.2d 471 (Tenn. Ct. App. 1996); *American Nat'l Property & Cas. Co. v. Gray*, 803 S.W.2d 693, 695-96 (Tenn. Ct. App. 1990). As succinctly noted by the Sixth Circuit in *Aetna Casualty & Surety Co. v. Sunshine Corp.*, 74 F.3d 685, 688 (6th Cir. 1996), "[t]he fact that the allegations of the suit may be groundless does not relieve the insurer of its obligation to provide a defense." Likewise, this Court in *Drexel*, *supra*, stated,

> [a]n insurer may not properly refuse to defend an action against its insured unless "it is plain from the face of the complaint that the allegations fail to state facts that bring the case within or potentially within the policy's coverage."

*Drexel Chem. Co.*, 933 S.W.2d at 480 (quoting *Glens Falls Ins. Co. v. Happy Day Laundry, Inc.*, 19784 T.V., 1989 WL 91082 (Tenn. Ct. App. Aug. 14, 1989)).

Our Supreme Court in *St. Paul Fire and Marine Insurance Co. v. Torpoco*, 879 S.W.2d 831 (Tenn. 1994), summarized the state of the law as follows:

> It is accepted in the overwhelming majority of jurisdictions that the obligation of a liability insurance company to defend an action brought against the insured by a third party is to be determined *solely* by the allegations contained in the complaint in that action. . . . Accordingly, if the allegations in the underlying tort actions in the instant case are within the risk insured against and there is a potential basis for recovery, then American must defend . . . , regardless of the actual facts or the ultimate grounds on which . . . liability to the injured parties may be predicated. . . . In any event, the pleading test for determination of the duty to defend is based exclusively on the facts as *alleged* rather than on the facts as they actually are. . . .

*Id.* at 835 (quoting *American Policyholders' Ins. Co. v. Cumberland Cold Storage Co.*, 373 A.2d 247 (Me.1977)).

The Court, therefore, must review the allegations of the complaint in order to determine whether the facts alleged are within the risk insured against. The Wattenbargers initiated this

lawsuit by swearing out a Civil Warrant against Blake in the Municipal General Sessions Court of Davidson County, Tennessee, on or about April 8, 1998. The warrant compelled Blake to answer for

> [d]amages as a result of the defective system installed by the defendant in the Plaintiff's home, caused by (1) the defendant's negligence, (2) Breach of express warranty under T.C.A. 47-2-312, (3) Breach of implied warranty of merchantability under T.C.A. 47-2-314, (4) Breach of implied warranty for a particular purpose under T.C.A. 47-2-315.

Clearly, the warrant alleged Blake's negligence in regard to a completed act - installation of the system - which is excluded from coverage under the terms of the CGL policy. The remaining allegations appear to pertain solely to the fitness of the water softener system, as installed, for its intended purpose. As ***Blaylock***, *supra*, held, "the standard comprehensive general liability policy does not extend coverage to an insured-contractor for a breach of contract action." 796 S.W.2d at 153. Consequently, given the allegations contained in the civil warrant, GAINSCO had no duty to defend Blake in the ***Wattenbarger*** lawsuit.

In view of the foregoing analysis, we affirm the order of the trial court dismissing the lawsuit filed by Blake. Costs on appeal are taxed to appellant, Blake Industries, Inc., and its surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE