**FORREST CONSTRUCTION, INC., Plaintiff,**

v.

**The CINCINNATI INSURANCE COMPANY, Defendant.**

No. 3:09–1036.

United States District Court,
M.D. Tennessee,
Nashville Division.

Aug. 2, 2010.

Philip L. Robertson, Smythe, Puryear & Robertson, Nashville, TN, for Plaintiff.

John M. Neal, Knoxville, TN, for Defendant.

## MEMORANDUM

ALETA A. TRAUGER, District Judge.

Pending before the court are the Motion for Summary Judgment filed by defendant Cincinnati Insurance Co. (Docket No. 26), to which the plaintiff has filed a response (Docket No. 43), and the Motion for Partial Summary Judgment filed by plaintiff Forrest Construction, Inc. (Docket No. 31), to which the defendant has filed a response (Docket No. 34) and in support of which the plaintiff has filed a reply (Docket No. 41). For the reasons discussed below, both motions will be granted in part and denied in part.

## FACTS

Plaintiff Forrest Construction, Inc. ("Forrest") is a construction company that, at all times relevant to this suit, was the named insured on an insurance policy with defendant Cincinnati Insurance Co. ("Cincinnati").[1] In 2004, Forrest was hired to build a residence for James and Debbie Laughlin in Brentwood, Tennessee. A dispute arose over the amount that the Laughlins owed Forrest, and Forrest filed suit in Tennessee state court. In February 2005, the Laughlins responded with several counterclaims.

The countercomplaint alleged that Forrest abandoned the project before it was finished, at which point "the Laughlins discovered Forrest's work was not done in a workmanlike manner and was done negligently." (Docket No. 1, Ex. 2 ¶ 10.) It alleged that Forrest "performed, or caused to be performed, work of such poor workmanship that it ... caus[ed] a potentially deadly collapse of the residence." (Id. ¶ 14; see also id. ¶ 19 ("Forrest recklessly constructed the foundation or recklessly caused to be constructed the foundation....").) It further alleged that, "[a]mong other items, the Laughlins discovered significant cracking in the foundation at the right rear corner of the dwelling, creating an unsafe and potentially life-threatening condition." (Id. ¶ 10.) As a result, the Laughlins allegedly "incurred damages in repairing said construction by Forrest." (Id. ¶ 12.) They asserted claims for (1) negligent construction, (2) gross negligence, (3) negligence per se, (4) breach of contract, (5) unjust enrichment, and (6) violation of the Tennessee Consum-

1. Unless otherwise noted, the facts are drawn from the parties' statements of facts (Docket Nos. 28, 32, and 35), the responses thereto, and related exhibits. Although facts are drawn from submissions made by both parties, on a motion for summary judgment, the court draws all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Brown v. United States*, 583 F.3d 916, 919 (6th Cir.2009).

er Protection Act. Each claim was premised on Forrest's poor workmanship.

Forrest's policy with Cincinnati was a standard commercial general liability ("CGL") policy. The policy obligated Cincinnati to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies," and it provided that Cincinnati had a "duty to defend the insured against any 'suit' seeking those damages." (Docket No. 24, Ex. 1 ¶ I.1(a).) It further provided:

> This insurance applies to ... "property damage" only if:
> (1) The ... "property damage" is caused by an "occurrence" that takes place in the "coverage territory"....

(*Id.* ¶ I.1(b).) "Property damage" was defined as "[p]hysical injury to tangible property, including all resulting loss of use of that property," or "[l]oss of use of tangible property that is not physically injured." (*Id.* ¶ V.20(a)-(b).)

The policy contained a number of coverage exclusions. Relevant here is the "your work" exclusion:

> This insurance does not apply to: ...
> "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."
> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

(*Id.* ¶¶ I.2, I.2(*l*).) "Your work" was defined as "[w]ork or operations performed by you or on your behalf." (*Id.* ¶ V.26(a).) The "products-completed operations hazard" was defined, in relevant part, as "'property damage' ... arising out of ... 'your work.'" (*Id.* ¶ V.19(a).)

Forrest notified Cincinnati of the Laughlins' counterclaim and requested that the insurer provide a defense. In April 2005, Cincinnati denied that it had a duty to defend, stating in a letter that, although the counterclaim did allege "property damage," the claimed damages fell under the "your work" exception. (Docket No. 1, Ex. 3 at 4, 6–8.) The denial letter stated that allegations that the relevant work was performed by subcontractors would trigger a duty to defend, but that "[t]he Counter–Complaint does not suggest that any of the work was performed by an entity besides the insured itself." (*Id.* at 7.)

In February 2008, after trial, the state trial court awarded damages of $134,521.88 to Forrest and $137,875.59 to the Laughlins; both sides appealed. *Forrest Constr. Co., LLC v. Laughlin,* No. M2008–01566–COA–R3–CV, 2009 WL 4723365, at *5, 2009 Tenn.App. LEXIS 829, at *14 (Tenn. Ct.App. Dec. 9, 2009), *perm. to appeal denied,* 2010 Tenn. LEXIS 602 (Tenn. June 18, 2010). In December 2009, the Tennessee Court of Appeals reversed the judgment in favor of Forrest, holding that the contractor could not recover any damages for breach of contract. *Id.* at *19, 2009 Tenn.App. LEXIS 829 at *57. The court also remanded to the trial court for a possible increase of the damages awarded to the Laughlins. *Id.* at *18, 2009 Tenn. App. LEXIS 829 at *54–55. The state-court litigation is still pending.

In October 2009, several months before the state appellate decision was issued, Forrest filed this suit. The Complaint contains claims for: (1) breach of contract for failure to defend and indemnify; (2) declaratory judgment regarding Cincinnati's duty to defend and indemnify; (3) bad-faith denial of Forrest's claim; and (4) violation of the Tennessee Consumer Protection Act. (Docket No. 1. ¶¶ 15–30.) To date, Forrest has incurred, and seeks reimbursement of, approximately $216,000 in attorney's fees and costs in the underlying state-court action.

## *ANALYSIS*

The parties have filed cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. The defendant seeks dismissal of the plaintiff's entire case, and the plaintiff seeks partial summary judgment regarding the insurer's duty to defend.

### I. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) requires the court to grant a motion for summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir.2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the [plaintiff]." *Moldowan*, 578 F.3d at 374.

" '[T]he judge's function is not … to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.' " *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). But "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient," and the plaintiff's proof must be more than "merely colorable." *Anderson*, 477 U.S. at 249, 252, 106 S.Ct. 2505. An issue of fact is "genuine" only if a reasonable jury could find for the plain-

tiff. *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

### II. Duty to Defend

The parties' briefs center on two issues: (1) whether notice of the counterclaims against Forrest triggered a duty to defend on the part of Cincinnati, and (2) how the later-decided Tennessee Supreme Court case of *Travelers Indemnity Co. of America v. Moore & Associates, Inc.*, 216 S.W.3d 302 (Tenn.2007), affected that duty.

The existence of a duty to defend is a legal question. *Moore*, 216 S.W.3d at 305. An insurer must provide a defense "when the underlying complaint alleges damages that are within the risk covered by the insurance contract and for which there is a potential basis for recovery." *Id.* "[W]hether a duty to defend arises depends solely on the allegations contained in the underlying complaint." *Id.*; *see also St. Paul Fire & Marine Ins. Co. v. Torpoco*, 879 S.W.2d 831, 835 (Tenn.1994) (holding that the duty to defend " 'is based exclusively on the facts as *alleged* rather than on the facts as they actually are' " (quoting *Am. Policyholders' Ins. Co. v. Cumberland Cold Storage Co.*, 373 A.2d 247 (Me.1977))). There is a duty to defend "if even one of the allegations is covered by the policy." *Moore*, 216 S.W.3d at 305. "Any doubt as to whether the claimant has stated a cause of action within the coverage of the policy is resolved in favor of the insured." *Id.*; *see also Drexel Chem. Co. v. Bituminous Ins. Co.*, 933 S.W.2d 471, 480 (Tenn.Ct.App.1996) (holding that an insurer must provide a defense "unless it is plain from the face of the complaint that the allegations fail to state facts that bring the case within or potentially within the policy's coverage"); *Dempster Bros., Inc. v. U.S. Fid. & Guar. Co.*, 54 Tenn.App. 65,

388 S.W.2d 153, 156 (1964) ("[W]here the allegations of the complaint against the insured are ambiguous or incomplete and it is doubtful whether or not they state a cause of action within the coverage of the policy ... such doubt will be resolved in favor of the insured.").

■ Most CGL policies, including the one at issue in this case, are "written on standardized forms developed by an association of domestic property and casualty insurers known as the Insurance Services Office." *Moore*, 216 S.W.3d at 305. The standard terms of the CGL are frequently litigated. *Id.* The policy is "divided into several components, including the 'insuring agreement,' which sets the outer limit of an insurer's contractual liability, and the 'exclusions,' which help define the shape and scope of coverage by excluding certain forms of coverage." *Id.* at 306 (quotation marks omitted). As with all insurance contracts, the standard rules of construction govern the interpretation of a CGL policy. *Id.* at 306.

Here, the insuring agreement provides coverage for "property damage" caused by an "occurrence."[2] It goes on to exclude from coverage damage to "your work," unless the "damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." The subcontractor exception to the "your work" exclusion was added to the standard CGL form in 1986; before then, damage to, or arising from, a subcontractor's work was excluded from coverage by the "your work" exclusion. *See id.* at 310; *Cincinnati Ins. Co. v. Grand Pointe, LLC,* No.

1:05–CV–161, 2006 WL 1806014, at *8, 2006 U.S. Dist. LEXIS 44602, at *24 (E.D. Tenn. June 29, 2006).

As explained below, the court finds that Cincinnati had a duty to defend Forrest, because the Laughlins' countercomplaint sufficiently alleged "property damage" to, or arising from, work performed by a subcontractor. Cincinnati argues that its denial of coverage was proper, because, under Tennessee law as it stood in 2005, the damage alleged in the countercomplaint did not constitute "property damage." (Docket No. 34 at 3.) It further claims that the 2007 *Moore* decision "dramatically changed the application of the Your Work Exclusion where subcontractors were involved." (Docket No. 27 at 6–13.) Cincinnati argues that this triggered an obligation for Forrest to inform the insurer of *Moore's* effect and to seek reconsideration of the denial.[3] (*Id.* at 20–21, 23–24.) Alternatively, Cincinnati argues that there was no duty to defend because the countercomplaint did not allege that Forrest used subcontractors. (*Id.* at 19.)

**A. Pre-*Moore* Case Law**

In arguing that its denial of coverage was proper under pre-*Moore* case law, Cincinnati focuses on the Tennessee Supreme Court case of *Vernon Williams & Son Construction, Inc. v. Continental Insurance Co.,* 591 S.W.2d 760 (Tenn.1979). In *Vernon Williams,* a general contractor was retained to build an addition to a warehouse, and the client sued for breach of contract based on the contractor's faulty concrete work. Specifically, the contractor had improperly calculated the weight-bear-

---

**2.** The parties do not dispute that the damage here was caused by an "occurrence" that happened during the policy period and within the coverage territory, or that the Laughlins' countercomplaint constituted a "suit" against Forrest.

**3.** This argument is undercut by the fact that the 2005 denial letter conceded that the countercomplaint alleged "property damage" and explicitly stated that the "your work" exclusion would not apply, and that coverage would exist, if the relevant work was allegedly performed by subcontractors. (*See* Docket No. 1, Ex. 3.)

ing capacity of the soil underneath the building, and one wall and the floor of the building had cracked. *Id.* at 761. The contractor, which had a CGL policy, sued its insurer, claiming that the insurer had a duty to defend and indemnify.

Similar to the CGL policy in this case, the *Vernon Williams* policy covered "property damage" caused by an "occurrence." *Id.* It also contained a number of exclusions, including the equivalent of the "your work" exclusion, but with no subcontractor exception. *Id.* at 761–62. The court focused on the proper interpretation of one particular exclusion that denied coverage for "liability assumed by the insured under any contract or agreement." *Id.* at 761. The exclusion contained an exception, however, providing that it "[did] not apply to . . . a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner." *Id.*

The court held that there was no duty to defend or to indemnify. Relying heavily on the then-recently decided case of *Weedo v. Stone–E–Brick, Inc.*, 81 N.J. 233, 405 A.2d 788 (1979), the court noted that the exception to the exclusion could not *grant* coverage, because coverage was granted by the contract's insuring clause. 591 S.W.2d at 763. It held that, in light of the policy's other exclusions, "the risk intended to be insured by a comprehensive general liability policy is faulty workmanship and materials which cause a tort liability to persons other than those to whom contractual obligation of workmanlike performance is due." *Id.*

This was because " '[t]he consequence of not performing well is part of every business venture; the replacement or repair of faulty goods and works is a business expense, to be borne by the insured-contractor in order to satisfy customers.' " *Id.* at 763 (quoting *Weedo*, 405 A.2d at 791). In contrast, "injury to people and damage to property caused by faulty workmanship" is

properly covered by a CGL, because "the accidental injury to property or persons substantially caused by [the contractor's] unworkmanlike performance exposes the contractor to almost limitless liabilities." *Id.* at 763–64 (quoting *Weedo*, 405 A.2d at 791). Thus, the court held that a CGL "does not provide coverage to an insured-contractor for a breach of contract action grounded upon faulty workmanship or materials, where the damages claimed are the cost of correcting the work itself." *Id.* at 764.

The *Vernon Williams* court also noted that "property damage" is defined as "injury to or destruction of tangible property," and that "a claim limited to remedying faulty workmanship or materials does not constitute 'injury to or destruction of tangible property.' " *Id.* at 763.

Subsequent lower court cases, relying on *Vernon Williams*, applied narrow definitions of "occurrence" and "property damage." For example, in *Blaylock & Brown Construction, Inc. v. AIU Insurance Co.*, 796 S.W.2d 146 (Tenn.Ct.App.1990), a contractor built a residence, and "inadequate support of the concrete floor slab result[ed] in subsidence or settlement, which in turn caused considerable damage to the main part of the home." *Id.* The homeowner sued, and the contractor's insurer initially defended under a reservation of rights but eventually discontinued the defense. *Id.* at 148. The damage to the house arose from faulty workmanship done by a subcontractor, and one clause of the contract arguably provided coverage for damage caused by a subcontractor's work. *Id.* at 149–52. But, reciting the holding in *Vernon Williams* that "a claim limited to remedying faulty workmanship or materials does not constitute [property damage]," the *Blaylock* court held that it was "constrained to agree that the coverage for property damage . . . does not extend coverage to an insured-contractor for a breach

of contract action such as this." *Id.* at 152–53; *see also State Auto Ins. Cos. v. Gordon Constr., Inc.,* No. M1999–00785–COA–R3–CV, 2001 WL 513884, at *1, *5–6, 2001 Tenn.App. LEXIS 349, at *2, *14–15 (Tenn.Ct.App. May 15, 2001) (citing *Vernon Williams* and holding that a contractor hired to repair tornado damage who " 'failed to perform repairs ... in a good and workmanlike manner ... [and] left the plaintiff's home in a state of disrepair' " did not cause an "occurrence" that would trigger coverage); *Standard Fire Ins. Co. v. Chester–O'Donley & Assoc., Inc.,* 972 S.W.2d 1, 7, 12 (Tenn.Ct.App. 1998) (holding that, because "[CGL] policies [do] not cover the costs of repairing or replacing the insured's defective product or faulty work," "property damage" happens only when there is "physical injury to portions of the building that were not within the scope of [the contractor's] work").

The Eastern District of Tennessee examined these cases in *Cincinnati Insurance Co. v. Grand Pointe, LLC,* which was decided after the instant defendant sent its denial letter to Forrest, but before the Tennessee Supreme Court decided *Moore*. *Cincinnati* involved a condominium complex in which certain subcontractors used "non-compliant sliding glass door[s] and/or windows" and failed to use proper sealants. *Cincinnati,* 2006 WL 1806014, at *3, 2006 U.S. Dist. LEXIS 44602, at *10. This resulted in "consequential damage caused by the entry of moisture into the condominium building structure." *Id.* Work by other subcontractors, some of which were not parties to the suit, was damaged. *Id.* at *3–4, 2006 U.S. Dist. LEXIS 44602 at *11.

The court found that the general contractor's insurer had no duty to defend. It noted that "[t]he damages alleged [were] damages to the condominium building, which [was] what Defendants were contracted to design and build." *Id.* at *7–8,

2006 U.S. Dist. LEXIS 44602 at *22–23. Because "there [was] no allegation of damage to something other than Defendants' own work product," there was no covered "property damage." *Id.* at *8, 2006 U.S. Dist. LEXIS 44602 at *23. The court explained that the existence of the subcontractor exception did not change its analysis:

> Some courts have held the new subcontractor exception abrogates the broad holdings of earlier cases, like *Vernon Williams,* that construed the [previous CGL] form. Although the Court understands the rationale of these decisions, several Tennessee cases have adopted the holding of *Vernon Williams* in cases where the 1986[CGL] form was used. The Court concludes Tennessee courts, in the future, may very well decide the subcontractor exception to the "your work" exclusion results in coverage in a case such as this where there has been faulty subcontractor work that has resulted in damage to the contractor's non-defective work. However, it is not the province of this Court to rewrite well established Tennessee law without some indication from the Tennessee Supreme Court [that] *Vernon Williams* or later decisions relying on it were abrogated by the addition of the subcontractor exception.

*Id.* at *8–9, 2006 U.S. Dist. LEXIS 44602 at *25 (citations omitted).

In sum, when Cincinnati issued its denial letter to Forrest, a reasonable argument existed that damage to any part of the Laughlins' house—which was the item that Forrest was hired to construct—caused by the poor workmanship of Forrest or its subcontractors did not constitute "property damage."

### B. *Moore*

In 2007, the Tennessee Supreme Court decided *Moore*. That case did not repudi-

ate or overturn *Vernon Williams,* but it did narrow *Vernon Williams'* application by clarifying the definitions of "occurrence" and "property damage."

In *Moore,* the plaintiff contractor designed and built a hotel. 216 S.W.3d at 304. The contractor had hired a subcontractor to "provide and install the hotel windows." *Id.* After construction was completed, the hotel owner filed a demand for arbitration, alleging that negligent window installation had "result[ed] in water and moisture penetration." *Id.* The demand further alleged:

> [This] in turn has caused pervasive premature deterioration of and damage to other components of the interior and exterior wall structure, and some room finishes and fixtures. Mold has been found in some locations. Rooms have had to be taken out of service for mold remediation and for water damage repair.

*Id.* The contractor sued its insurer, claiming that the insurer had a duty to defend.

The court explained that *Vernon Williams* based its analysis "upon the 'exclusions' in the [CGL] rather than the 'insuring agreement,'" and that it did not, for example, discuss what constitutes an "occurrence" under the CGL. *Id.* at 307. The court stated that subsequent courts' "[r]eliance upon a CGL's 'exclusions' to determine the meaning of 'occurrence' has resulted in 'regrettably overbroad generalizations' concerning CGLs." *Id.* (quoting *Am. Family Mut. Ins. Co. v. Am. Girl Inc.,* 268 Wis.2d 16, 673 N.W.2d 65, 76 (2004)). *Moore* defined an "occurrence" as an event that "would [not] have been foreseeable if the insured had completed the work properly." *Id.* at 309.

The court then addressed the definition of "property damage." It noted that, although *Vernon Williams* held that "a

claim limited to remedying faulty workmanship or materials does not constitute 'injury to or destruction of tangible property,'" the *Vernon Williams* court "did not apply this rule to the facts of that case or expound upon its implication for future cases." *Id.* The *Moore* court reiterated the rule and clarified that "a 'claim limited to faulty workmanship or materials' is one in which the sole damages are for replacement of a defective component or correction of faulty installation." *Id.*

To illustrate this concept, the court quoted at length from a California appellate case:

> "We do not think that the mere inclusion of a defective component, where no physical harm to the other parts results therefrom, constitutes 'property damage' within the meaning of the policy. For example, if an automobile crash results from the failure of its defective tire, the defective component can be said to have caused 'property damage' to the finished product. If, however, some of the tires purchased by the automobile manufacturer are found to be defective and the manufacturer therefore withdraws its cars from the market, there has not been 'injury to or destruction of tangible property[.]'"

*Id.* at 309–10 (quoting *St. Paul Fire & Marine Ins. Co. v. Coss,* 80 Cal.App.3d 888, 145 Cal.Rptr. 836, 839 (1978)) (alteration in original).

The *Moore* court then determined that the underlying claim at issue did allege "property damage":

> We conclude that [the hotel owner's] claim is not limited to faulty workmanship and does in fact allege "property damage." [The] subcontractor allegedly installed the windows defectively. Without more, this alleged defect is the equivalent of the "mere inclusion of a defective component" such as the installation of a defective tire, and no "proper-

ty damage" has occurred. The alleged water penetration is analogous to the automobile accident that is caused by the faulty tire. Because the alleged defective installation resulted in water penetration causing further damage, [the hotel owner] has alleged "property damage."

*Id.* at 310.

Having concluded that there was "property damage" caused by an "occurrence," the court examined whether coverage was precluded by the "your work" exclusion. It noted that "the entire hotel meets the definition of 'your work' because the entire construction project was performed by [the contractor.]." *Id.* Thus, "all damages to the hotel *initially* are excluded by the 'your work' exclusion." *Id.* But, because the windows were allegedly installed by a subcontractor, and because the CGL at issue contained a subcontractor exception to the "your work" exclusion, the damages were not excluded from coverage. *Id.* The court noted that the subcontractor exception "reflects a change in CGL policy language, which, in this case, affects the relevance of the holding in *Vernon Williams.*" *Id.* The court ultimately held that the insurer had a duty to defend the contractor. *Id.* at 311.

## C. "Property Damage"

■ Cincinnati argues that, under pre-*Moore* case law, the Laughlins' counter-complaint did not allege "property damage." (Docket No. 34 at 3.) It seemingly concedes that, under *Moore,* the counter-complaint did sufficiently alleged "property damage."

The court agrees that, in light of *Moore,* the countercomplaint alleged "property damage." The alleged cracking in the foundation is analogous to the water penetration in *Moore*—it is physical damage to the property that occurred *after* the relevant component had been incorrectly installed. Whatever the precise construction defect was here, that defect resulted in further, tangible damage to the house. This was not a case where the "sole damages" were for "replacement of a defective component or correction of faulty installation." *See Moore,* 216 S.W.3d at 309–10 (finding "property damage" "[b]ecause the alleged defective installation resulted in water penetration causing further damage").

In addition, the countercomplaint was ambiguous regarding the extent of the damage to the Laughlins' house. It alleged that, "*[a]mong other items,* the Laughlins discovered significant cracking in the foundation," and that they incurred damages in making repairs. (Docket No. 1, Ex. 2 ¶¶ 10, 12 (emphasis added).) This explicitly leaves open the possibility that the poorly constructed foundation caused damage to the rest of the house.[4] *Moore*

---

4. Indeed, at trial, the Laughlins introduced evidence of damage to items throughout the house. In its decision, the Tennessee Court of Appeals recited these items:

As for the defects that had been repaired, they included repairs to the master shower from water infiltration, replacement of the upstairs front porch, and repairs to the front doors of the residence. Other repairs included replacement of broken mirrors and missing door parts, repairing the irrigation system, replacing brick columns on the driveway, and repairing the HVAC system. . . .

As for the defects that had not been repaired as of trial, they included the construction of the outside patio, which consisted of three exterior walls and one interior foundation wall, of which the foundation wall was not grouted as required by building codes, the patio walls were not connected to the base of the patio floor for support, and the exterior walls did not have vertical steel in them. . . . [D]ue to these defects, cracks were already present in the patio and further deterioration was expected.

made it clear that "property damage" occurs when one component of a finished product damages another component. *See* 216 S.W.3d at 309 (explaining that a defective tire can cause "property damage" to the rest of an automobile). Because an ambiguous complaint must be interpreted in favor of providing coverage to the insured, the allegations here sufficiently alleged "property damage."

### D. The "Your Work" Exclusion

■ Cincinnati argues that the "your work" exclusion applies to bar coverage, because the countercomplaint did not sufficiently allege that the work at issue was performed by subcontractors. (Docket No. 27 at 19.) But the countercomplaint repeatedly refers to allegedly defective work that Forrest "performed, *or caused to be performed.*" (Docket No. 1, Ex. 2 ¶ 12 (emphasis added); *see also id.* ¶ 19 ("Forrest recklessly constructed the foundation or recklessly caused to be constructed the foundation....").) Forrest correctly argues that the usual way a contractor would "cause" certain work to be performed—as opposed to performing the work itself—is to hire a subcontractor. *Cf. Fireguard Sprinkler Sys., Inc. v. Scottsdale Ins. Co.,* 864 F.2d 648, 650 (9th Cir.1988) (finding that, in a clause regarding " 'property damage to work performed by or on behalf of the named insured[,]' ... [t]he phrase 'or on behalf of' refers to the work of subcontractors"). Again, given that the court must interpret any ambiguity in favor of finding coverage, these allegations are sufficient to implicate the work of subcontractors. As in *Moore,* even if the "your work" exclusion initially excludes coverage, the subcontractor exception applies to negate the exclusion. *See* 216 S.W.3d at 310.

In sum, because the countercomplaint sufficiently alleged "property damage,"

and because the subcontractor exception negated the "your work" exclusion, the court finds that Cincinnati had a duty to defend Forrest against the Laughlins' countercomplaint.

### E. Notice

■ Cincinnati makes several arguments that, because *Moore* represented a change in the law, Forrest was responsible for requesting reconsideration of Cincinnati's denial after *Moore* was published. First, it argues that Forrest's claim is barred by the doctrine of laches, because, "[h]ad Forrest communicated with Cincinnati after *Travelers v. Moore* and advised that subcontractors were involved, it is probable that ... Cincinnati would have agreed [to provide a defense]." (Docket No. 27 at 15.) Next, it argues that Forrest's failure to seek reconsideration of the denial is tantamount to late notice, because, "at the time the [initial notice] was submitted, there was no possibility of coverage." (*Id.* at 20.) Finally, Cincinnati urges the court to find that insureds who have had their claims denied "should bear the burden of requesting re-evaluation of coverage after the applicable law changes." (*Id.* at 23–24.)

■ These arguments are unavailing. Under Tennessee law, "laches will bar a claim filed within the limitations period if there is an unreasonable and inexcusable delay combined with loss of evidence that prejudices the defendant." *Pac. E. Corp. v. Gulf Life Holding Co. (In re Pac. E. Corp.),* 223 B.R. 523, 526 (Bankr. M.D.Tenn.1998); *see also Dennis Joslin Co., LLC v. Johnson,* 138 S.W.3d 197, 200 (Tenn.Ct.App.2003) (noting that laches "requires an unreasonable delay that prejudices the party seeking to employ laches as a defense"). Cincinnati states that it

has been prejudiced by the "enormous attorney's fees" that Forrest has incurred, and it complains that, "[d]espite ... the Supreme Court's ruling in [*Moore*], ... [Forrest] did absolutely nothing to request that Cincinnati reconsider coverage." (Docket No. 27 at 15, 18.)

■ Laches does not apply here. "[W]here [an] insurer breaches its contract by refusing to defend, and the insured then retains counsel to protect himself or herself, the insurer cannot ... object to the insured's handling of the case." 14 Couch on Ins. § 202:7 (3d ed.). Furthermore, any delay between the issuance of *Moore* and Forrest's filing of this suit was not unreasonable or inexcusable. Cincinnati did not premise its denial of coverage on the definition of "property damage," which is the only relevant aspect of law that *Moore* arguably changed. Instead, the letter clearly stated that the counter-complaint *did* allege "property damage." It denied coverage only because Cincinnati concluded that the "your work" exception applied, and it specifically noted that coverage would exist if the allegations mentioned subcontractor work.[5] Thus, after *Moore,* there was no reason for Forrest to expect Cincinnati to change its decision to deny coverage—any change in law announced by *Moore* was irrelevant to Cincinnati's previous explanation of its denial.

Cincinnati already recognized the validity of the subcontractor exception.

■ For the same reason, the court finds that, even if Forrest were under some hypothetical duty to notify Cincinnati or to re-submit a claim after a change in relevant law, Forrest did not breach that duty.[6]

### F. Attorney's Fees

■ Forrest argues that, in addition to recovering the costs and attorney's fees incurred in defending the underlying counterclaims, it should recover the attorney's fees incurred in bringing the instant action. (Docket No. 33 at 15–16.) Tennessee law controls this issue. *See Weiss v. St. Paul Fire & Marine Ins. Co.,* 283 F.3d 790, 798 (6th Cir.2002). But Forrest has cited no Tennessee cases for the proposition that it should be awarded attorney's fees; instead, it cites decades-old cases from Montana and the Tenth Circuit. (*Id.* (citing *Home Ins. Co. v. Pinski Bros., Inc.,* 160 Mont. 219, 500 P.2d 945 (1972); *Sec. Ins. Co. of New Haven v. White,* 236 F.2d 215 (10th Cir.1956)).)

It appears that Tennessee courts would not award attorney's fees in this situation. In *Carter v. Virginia Surety Co.,* 187 Tenn. 595, 216 S.W.2d 324 (1948), an insur-

---

5. The denial letter states:

Since all of the [Laughlins'] damages are alleged to arise from the 18 insured's defective work, [the "your work"] exclusion will completely negate coverage. We do offer one caveat—the exclusion does not apply to work performed by subcontractors. The Counter–Complaint does not suggest that any of the work was performed by an entity besides the insured itself. Rather, it is replete with allegations referencing damages sustained due to the insured's work. If the Counter–Complaint should be amended to allege defective workmanship by any subcontractors, we would need to revisit this issue.

(Docket No. 1, Ex. 3 at 7.)

6. It is doubtful that such a duty exists. Cincinnati has provided no authority or case law in support of its position. Generally, when an insurer refuses to defend an insured, the insured is relieved of obligations to the insurer. *See, e.g., Webb v. Ins. Co. of N. Am.,* 581 F.Supp. 244, 249 (W.D.Tenn.1984) ("The Tennessee Courts have held that an insurer's denial of liability will waive the policy's requirement regarding notice and proof of loss."). In addition, the insurance contract here only required Forrest to give one notice of a claim, "as soon as practicable" after the underlying suit is filed. (Docket No. 24, Ex. 1 ¶¶ IV.2(a)-(c).)

er brought an action against its insured, seeking a declaratory judgment that it had no duty to defend an underlying suit. *Id.* at 325. Although the insurer's declaratory judgment action was not brought fraudulently or in bad faith, it was eventually dismissed. *Id.* at 325, 328. The Tennessee Supreme Court denied the insured's claim for attorney's fees incurred in defending the insurer's action; "[i]n the absence of contract, statute, or recognized ground of equity, there is no inherent right to have attorneys' fees paid by [the] opposing side." *Id.* at 328 (quotation marks omitted). This accords with the rules of certain other jurisdictions, which only award attorney's fees to the insured in the case of bad faith on the part of the insurer. *See, e.g., NGK Metals Corp. v. Nat'l Union Fire Ins. Co.,* No. 1:04–cv–56, 2005 WL 1115925, 2005 U.S. Dist. LEXIS 40603 (E.D.Tenn. Apr. 29, 2005) (noting that, under Pennsylvania law, "[a]n insured who is compelled to bring a declaratory judgment action to establish his insurer's duty to defend ... may recover his attorneys' fees incurred in the declaratory judgment action if the insurer has, *in bad faith,* refused to defend the [underlying] action" (emphasis added)).

Here, nothing indicates that Cincinnati's refusal to defend Forrest was in bad faith. The insurer laid out its rationale for denial in an eight-page letter. Although the court obviously disagrees with the letter's conclusion that the subcontractor exception was inapplicable, the arguments contained in the letter are not so unreasonable as to suggest bad faith. Indeed, the countercomplaint does not explicitly mention subcontractors—instead, it refers to them only by somewhat ambiguous implication. Furthermore, until the filing of this suit, Forrest did not contest the denial and did not inform Cincinnati that subcontractors were actually involved in building the house's foundation. Forrest presents no evidence, aside from the fact of the denial

itself, that the denial was in bad faith. Accordingly, the plaintiff cannot recover attorney's fees for the instant action.

### G. Punitive Damages

Forrest also seeks to recover punitive damages for Cincinnati's breach. Although punitive damages are generally not recoverable for breach of contract, "where the breach involves 'tortious conduct' proven by clear and convincing evidence to be intentional, fraudulent, malicious, or reckless, punitive damages are available." *Scott v. Houston,* No. E2009–01118–COA–R3–CV, 2010 WL 680984, at *8, 2010 Tenn.App. LEXIS 153, at *24–25 (Tenn.Ct.App. Feb. 26, 2010); *see also Hodges v. S.C. Toof & Co.,* 833 S.W.2d 896, 901 (Tenn.1992) (holding that "punitive damages are to be awarded only in the most egregious of cases"). For the same reasons that Forrest has not shown bad faith, however, it has not shown that Cincinnati intentionally, fraudulently, maliciously, or recklessly breached the insurance contract. Accordingly, the plaintiff cannot recover punitive damages.

### III. Bad Faith and Tennessee Consumer Protection Act Claims

There are procedural defects with the plaintiff's two remaining claims. First, Forrest has asserted a claim for bad faith pursuant to Tenn.Code Ann. § 56–7–105. As described above, the plaintiff has not shown that Cincinnati acted in bad faith. But regardless of the substantive merits of the claim, that statute requires the insured to make a formal demand for coverage at least 60 days before seeking the bad-faith penalty. *Id.* § 56–7–105(a); *see also Pac-Tech, Inc. v. Auto–Owners Ins. Co.,* 292 S.W.3d 1, 9 (Tenn.Ct.App.2008). The demand must inform the insurance company that, if the disputed claim is not paid, the insured intends to assert a bad faith claim.

*Hampton v. Allstate Ins. Co.,* 48 F.Supp.2d 739, 747 (M.D.Tenn.1999). The plaintiff admits that it did not send such a demand. (Docket No. 43 at 20.)

■ Second, Forrest has asserted a claim under the Tennessee Consumer Protection Act ("TCPA"), Tenn.Code Ann. § 47–18–101 *et seq.* The TCPA provides that any private action "shall be brought within one (1) year from a person's discovery of the unlawful act or practice." *Id.* § 47–18–110. The allegedly unlawful act here was the issuance of the denial letter, which occurred in 2005. This suit was not filed until 2009.

The plaintiff argues that these defects are irrelevant, because the defendant's "failure to 'reevaluate' its duty to defend after this suit was filed ... constitute additional bad faith denials." (Docket No. 43 at 20.) The court disagrees. The plaintiff cannot overcome the demand requirement or the statute of limitations by arguing that Cincinnati's refusal to provide a defense is somehow an ongoing act. Accordingly, the court will dismiss the bad faith and TCPA claims.

### CONCLUSION

For all of the reasons discussed above, the court will grant in part and deny in part both motions. The court finds that Cincinnati had, and breached, a duty to defend Forrest against the Laughlins' counterclaims. Forrest cannot, however, recover punitive damages or attorney's fees incurred in bringing the instant suit. Furthermore, the bad faith and TCPA claims will be dismissed.

An appropriate order will enter.

### ORDER

For the reasons expressed in the accompanying Memorandum, the Motion for Summary Judgment filed by defendant Cincinnati Insurance Co. (Docket No. 26) and the Motion for Partial Summary Judg-

ment filed by plaintiff Forrest Construction, Inc. (Docket No. 31) are both **GRANTED IN PART** and **DENIED IN PART.** The court **DECLARES** that the defendant has a duty to defend the plaintiff in the underlying state-court action, and it **GRANTS** summary judgment to the plaintiff on Counts I and II, to the extent that those counts are premised on the defendant's breach of its duty to defend. To the extent that Counts I and II are premised on the defendant's duty to indemnify, they remain for trial. The computation of damages will be determined at or after trial, and neither punitive damages nor attorney's fees incurred in bringing the instant action will be awarded. Counts III and IV are hereby **DISMISSED.**

Furthermore, the Motion to Supplement the Record filed by the defendant (Docket No. 24) is **GRANTED,** and the Motion to Amend Answer to Complaint filed by the defendant (Docket No. 25) is **DENIED** as moot.

It is so Ordered.