# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### August 23, 2012 Session

## STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY ET AL. v. SOUTHERN TRUST INSURANCE COMPANY

**Appeal from the Circuit Court for Davidson County**
**No. 10C388      Hamilton V. Gayden, Jr., Judge**

---

**No. M2011-02727-COA-R3-CV - Filed October 23, 2012**

---

This is a dispute between insurance companies over coverage related to a car accident.  We conclude that the trial court erred in finding that the driver's auto policy covered damages resulting from the independent acts of negligence of the car owner.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

Cynthia D. Hall and H. Richard Marcus, Chattanooga, Tennessee, for the appellant, Southern Trust Insurance Company

Joseph Bernard Klockenkemper, II, Nashville, Tennessee, for the appellees, State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

The car accident underlying this insurance dispute occurred on November 10, 2007. Ralph Tallent, driving a car owned by Jimmy Wilson, crashed into some parked cars and a building.  Tallent was using Wilson's car as a temporary substitute for his own car, which had been damaged in an accident the previous evening.  As a result of the accident on November 10, 2007, a number of claims were made against Tallent and Wilson.  The claim filed by Cheryl Farner, a merchant whose consignment merchandise was damaged by the accident, resulted in a lawsuit against Tallent and Wilson.  Farner's complaint included an

allegation that Wilson was negligent in entrusting his car to Tallent, whom he knew abused alcohol.

At the time of the accident, Tallent was insured by auto and umbrella insurance policies issued by Southern Trust Insurance Company; Wilson was insured by auto and umbrella insurance policies issued by State Farm Automobile Insurance Company and State Farm Fire & Casualty Company ("State Farm"). While they agreed that State Farm's auto policy was primary, State Farm and Southern Trust disagreed about the correct excess coverage priority. State Farm settled claims with the various injured parties.

On February 2, 2010, State Farm filed this declaratory judgment action against Southern Trust praying for a determination that, as to claims against Tallent, "the personal auto policy issued to Ralph B. Tallent by [Southern Trust] is secondary and immediately excess to the primary [State Farm] car policy; the personal liability umbrella policies of [Southern Trust and State Farm] are then secondary and excess to the underlying automobile liability coverages . . . ." As to claims made against Wilson, State Farm sought a declaration that "the automobile liability coverage afforded under the personal auto policy issued by [Southern Trust to Tallent constituted] liability coverage immediately secondary and excess and directly applicable upon exhaustion of the limits of coverage under the primary [State Farm auto] coverage" and that "the personal liability umbrella policy issued by [State Farm to Wilson was] then secondary and excess to the underlying automobile liability coverages . . . ." State Farm further sought a declaration that the amounts it paid in settlement of claims was fair and reasonable and that a judgment in the amount of $262,589 be entered in favor of State Farm against Southern Trust for amounts advanced by State Farm in excess of the primary car policy coverage limit of $50,000.

In its answer, Southern Trust denied that Wilson "was an insured for liability purposes or otherwise" under the Southern Trust policies. Southern Trust admitted that "its policy is a secondary and excess as to the claims against Brian Tallent only" and that the umbrella policies of State Farm and Southern Trust were secondary to the auto coverages "as to any claims against Brian Tallent." Southern Trust averred that State Farm's umbrella policy would be "secondary to the State Farm auto policy for any claims against Jimmy Wilson" and denied that its policy was "secondary, excess or otherwise applicable to any claims made against" Wilson. With respect to State Farm's defense and settlement efforts, Southern Trust further alleged as follows:

> Defendant states that its counsel at all times asked to be kept apprised of the
> developments in the Monroe County lawsuit [brought by Ms. Farner] and any
> settlement efforts. When counsel hired by [State Farm] to represent Jimmy
> Wilson and Ralph Tallent refused to do so, defendant's counsel made an

-2-

appearance in the lawsuit on behalf of Ralph Tallent so that it could be kept apprised of developments. Counsel hired by defendant offered to participate in settlement discussions and appeared at mediation but was advised that State Farm intended to pay all settlement proceeds and settle the case without any participation from defendant [Southern Trust].

Southern Trust denied that the settlement amounts paid by State Farm were fair and reasonable.

State Farm filed a motion for summary judgment seeking a declaration that, as to claims against both Wilson and Tallent, Southern Trust's auto policy was immediately secondary to State Farm's auto policy, and that any coverages under the companies' umbrella policies were secondary and excess to the auto policies. In an opinion entered on September 3, 2010, the trial court held that the correct priority of coverage was 1) Wilson's State Farm auto policy with a limit of $50,000, 2) Tallent's Southern Trust auto policy with a limit of $300,000, and 3) Wilson's State Farm umbrella policy with a limit of $1,000,000. The court entered an order on September 24, 2010 granting State Farm's motion for summary judgment in accordance with its opinion; the court stated that the issue of damages had not yet been addressed.

After this Court denied Southern Trust's application for an interlocutory appeal, State Farm filed another motion for summary judgment requesting judgment in the amount of $262,589.84. The motion was supported by the affidavit of Suzy Burnette, one of the primary claim representatives involved in the adjustment and settlement of the claims arising out of the accident on November 10, 2007. After describing the various settlements, Ms. Burnette opined that the amounts paid "were fair and reasonable given the nature and extent of the losses and claims involved." Southern Trust opposed State Farm's motion for summary judgment on damages and filed a response to State Farm's statement of material facts as well as an affidavit of Bryan O'Quinn, a claims manager for Southern Trust. Mr. O'Quinn analyzed the settlements made by State Farm and disputed the reasonableness of the amounts paid. Southern Trust also submitted the affidavit of attorney Richard Marcus, who was retained by Southern Trust, concerning his attempts to have input in the settlement of the claims by State Farm.

In an order entered on November 10, 2011, the trial court granted State Farm's motion for summary judgment and entered judgment in State Farm's favor against Southern Trust for $262,589.84.

On appeal, Southern Trust argues that the trial court erred in ruling (1) that Southern Trust's auto policy had priority over State Farm's umbrella policy, (2) that Wilson was an

insured under the Southern Trust auto policy on Tallent, and (3) that Southern Trust waived its right to contest the reasonableness of the damages paid by State Farm.

STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. Summary judgments do not enjoy a presumption of correctness on appeal. *BellSouth Adver. & Publ'g Co. v. Johnson,* 100 S.W.3d 202, 205 (Tenn. 2003). In reviewing a summary judgment, this court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown,* 955 S.W.2d 49, 50 (Tenn. 1997). We consider the evidence in the light most favorable to the non-moving party and resolve all inferences in that party's favor. *Godfrey v. Ruiz,* 90 S.W.3d 692, 695 (Tenn. 2002). When reviewing the evidence, we must determine whether factual disputes exist. *Byrd v. Hall,* 847 S.W.2d 208, 211 (Tenn. 1993). If a factual dispute exists, we must determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Id.; Rutherford v. Polar Tank Trailer, Inc.,* 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998). To shift the burden of production to the nonmoving party who bears the burden of proof at trial, the moving party must negate an element of the opposing party's claim or "show that the nonmoving party cannot prove an essential element of the claim at trial." *Hannan v. Alltel Publ'g Co.,* 270 S.W.3d 1, 8–9 (Tenn. 2008).[1]

The interpretation of a contract is a question of law. *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999). The determination of the scope of insurance coverage is an issue of law. *U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.*, 277 S.W.3d 381, 386 (Tenn. 2009).

ANALYSIS

1.

The first two issues presented by Southern Trust are (1) whether the trial court erred in ruling that Southern Trust's auto policy has priority over State Farm's umbrella policy, and (2) whether the trial court erred in ruling that Wilson was an insured under Tallent's Southern

---

[1]Tennessee Code Annotated § 20-16-101 (2011), a provision that is intended to replace the summary judgment standard adopted in *Hannan*, is inapplicable to this case. *See Sykes v. Chattanooga Hous. Auth.*, 343 S.W.3d 18, 25 n.2 (Tenn. 2011) (noting that section 20-16-101 is only applicable to actions filed on or after July 1, 2011).

Trust auto policy. We have determined that the answers to these questions are related and will, therefore, address them together.

We consider the case of *Modern Service Casualty Insurance Co. v. Aetna Casualty & Surety Co.*, No. 02A01-9401-CV-00006*, 1994 WL 704810 (Tenn. Ct. App. Dec. 19, 1994)*, to be controlling. In *Modern Service*, the court was asked to determine the order of priority between three insurance policies in effect with respect to an automobile accident in which Ward was driving a vehicle owned by his parents when he was involved in an accident. *Id.* at *1. Peay, a passenger in the vehicle, sued Ward for damages. *Id.* The three insurance policies at issue were a Modern Services ("MSI") auto policy issued to Ward, an Aetna auto policy issued to Ward's parents, and an Aetna umbrella policy issued to Ward's parents. *Id.* Aetna conceded that its auto policy provided primary coverage. *Id.* In affirming the trial court's determination that Aetna's umbrella policy was excess over the two auto policies, the court interpreted Tenn. Code Ann. § 56-7-1101(a), which provides:

> (a)(1) In all cases arising out of the use of a motor vehicle on which the owner of the motor vehicle has any insurance coverages, the owner's policy is primary if the vehicle is being operated with the permission of the owner and within the scope of the permission granted.
>
> (2) Any other coverages which may be available to the permittee are not applicable unless and until the limits of all coverages provided by the owner's policy first are exhausted.

*Id.* MSI argued that both of the Aetna policies were owner policies and, under the statutory language, should therefore be exhausted before the MSI policy came into play. *Id.* at *3.

After reviewing the relevant policy provisions and the legislative history of Tenn. Code Ann. § 56-7-1101(a), the court rejected MSI's argument. *Id.* at *4-5. The court reasoned as follows:

> The statute in question [Tenn. Code Ann. § 56-7-1101(a)] obviously was passed to eliminate the confusion and controversy concerning application of insurance coverage when a person is involved in an accident while driving someone else's car. The simplistic approach, and that adopted by the legislature, was, and continues to be, that the insurance on the car involved in the accident is primary. The legislature, however, was careful in its adoption of this position by specifically providing that the primary coverage resided with the "owner's *policy*." The singular use of the word "policy," especially when the statute was amended to expand its application, is indicative of the

legislature's intention to confine the statute to a single auto insurance policy.

*Id.* at *5. The court went on to interpret the Aetna umbrella policy as being, by its terms, "not an automobile insurance policy, but a policy covering all areas of liability to which the insured may be subjected." *Id.* Moreover, the court observed that "[t]he excess nature of the policy is explicitly contained in the specific requirement that payment pursuant to the policy will only be made for liability above the minimum limit of one or more primary insurance policies." *Id.* The court reached the following conclusion: "Considering the three policies of insurance involved and the unmistakable intention of the legislature in passing the 'primary-excess' statute, the Aetna [umbrella policy] is truly excess over the MSI policy, which in turn is excess only to the primary coverage afforded by Aetna in the auto policy." *Id.*

In the present case, as in *Modern Service*, Tenn. Code Ann. § 56-7-1101(a) requires that the owner's auto policy—Wilson's State Farm policy—takes first priority and that the other auto policy in effect—Tallent's Southern Trust policy—comes second in the order of priority. Like the umbrella policy in *Modern Service*, the State Farm umbrella policy is an excess policy under which payment "will only be made for liability above the minimum limit of one or more primary insurance policies." *Id.* The State Farm umbrella policy requires underlying insurance policies and pays only "your net loss minus the retained limit," which is defined as "the total limits of liability of your underlying insurance." Under the reasoning employed by the court in *Modern Service*, the State Farm umbrella policy would be excess over the Southern Trust auto policy.

The next question, however, is whether Tallent's auto policy provides coverage. With respect to Tallent's negligence, there is no dispute that the Southern Trust auto policy provides coverage for liability not covered by State Farm's auto policy. The real crux of this case is the question of whether Southern Trust's auto policy on Tallent provides coverage for Wilson.

We agree with Southern Trust that the answer to this question depends upon the type of liability at issue. As far as this Court can discern from the record on appeal, the basis for any claims against Wilson is that he himself was negligent or otherwise at fault for allowing Tallent to use his car. Cheryl Farner's complaint contains the following pertinent allegations:

> The defendant Jim Wilson loaned [Tallent][2] his pickup truck with the full knowledge that the Defendant Ralph Brian Tallent abused alcohol, that in fact

---

[2]The complaint actually states that Wilson loaned "the Plaintiff" his truck; and the plaintiff is Cheryl Farner. In light of the context, this reference appears to be an error.

he had been treated for alcoholism unsuccessfully and that the Defendant Jim Wilson had posted bail for the Defendant Ralph Brian Tallent on the morning of November 10, 2007, and arranged for his release from jail, which charges resulted from Ralph Brian Tallent having crashed his vehicle into the home of Bonnell Cooper on the previous evening, November 9, 2007, while intoxicated.

Plaintiff would further aver that Jim Wilson's act of entrusting his vehicle to the Defendant Ralph Brian Tallent, his stepson, when he knew not only of the history of alcohol abuse but of the crash caused by his intoxication the previous evening, was placing the safety of individuals as well as the property of others in grave danger and that said entrustment was negligent and renders the Defendant Jim Wilson liable along with the Defendant Ralph Brian Tallent for the damages caused by Tallent's drunken driving.

There appears to be no basis for arguing that Wilson should be vicariously liable for Tallent's actions under agency principles.[3]

The question then becomes whether the terms of Southern Trust's auto policy would cover Wilson's alleged acts of negligence. In interpreting insurance contracts, we apply the same rules of construction that govern the interpretation of other contracts. *Travelers Indem. Co. of Am. v. Moore & Assocs., Inc.*, 216 S.W.3d 302, 305 (Tenn. 2007). We are to give the language used in an insurance contract its usual and ordinary meaning and construe the policy "as a whole in a reasonable and logical manner." *Id.* at 306 (quoting *Standard Fire Ins. Co. v. Chester-O'Donley & Assocs., Inc.*, 972 S.W.2d 1, 7 (Tenn. Ct. App. 1998)). Any ambiguity is to be construed against the party who drafted the contract. *Travelers Ins. Co. v. Aetna Cas. & Sur. Co.*, 491 S.W.2d 363, 365 (Tenn. 1973).

For purposes of this appeal, the parties agree that Wilson's car (driven by Tallent) fits the definition of "your covered auto"[4] found in the definitions section of the Southern Trust auto policy. The key provision with respect to determining whether Wilson is covered is the following provision defining "insured" to include:

---

[3]In the event a basis for vicarious liability does exist, the Southern Trust policy provision at issue would make Wilson an insured.

[4]The relevant language defines "your covered auto" to include "[a]ny auto or 'trailer' you do not own, while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its: a. breakdown; b. repair; c. servicing; d. loss; or e. destruction."

For "your covered auto," any person or organization *but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.*

(Emphasis added). Southern Trust and State Farm offer different interpretations of this language.

State Farm asserts that this provision makes Wilson an insured in his own right "for his own legal responsibility, be that responsibility based on negligent entrustment or vicarious liability." In support of this position, State Farm points to another provision under the same part of the Southern Trust policy (regarding liability coverage) stating that Southern Trust "will pay damages for 'bodily injury' or 'property damage' for which any 'insured' becomes legally responsible because of an auto accident." State Farm argues that legal responsibility is not qualified in any way and that Southern Trust specifically referenced vicarious liability in another section defining "insured":

For any auto or "trailer," other than "your covered auto," any other person or organization but only with respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded under this Part.

Under State Farm's reasoning, Southern Trust did not limit legal responsibility in the section regarding "your covered auto."

We fail to find State Farm's reasoning persuasive. The language of the key provision does, in fact, limit the type of legal responsibility to "legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part." The question becomes whether Wilson is being held liable for "acts or omissions of a person for whom coverage is afforded under this Part." The most logical interpretation for the language referencing a person for whom coverage is afforded would be Tallent. State Farm's argument that this language refers to the policy provision (quoted above) regarding paying damages for which "any 'insured' becomes legally responsible" is based upon circular reasoning (defining an insured to be a person legally responsible for the acts or omissions of an insured) and would negate the specific language used in the provision regarding "your covered auto." The negligent entrustment claims against Wilson are not based upon acts or omissions of a person covered under the policy; rather, they are based upon his own acts or omissions.

We must conclude that the trial court erred in granting summary judgment in favor of State Farm with respect to the application of the Southern Trust policy to claims for negligent entrustment against Wilson. An issue of fact remains as to the percentage of settlement money paid out by State Farm for claims of negligent entrustment against Wilson; as to these

-8-

claims, State Farm would be liable under the umbrella policy for amounts not covered under its auto policy on Wilson.

2.

The remaining issue is whether Southern Trust waived its right to contest the reasonableness of the damages paid by State Farm.

In its order granting summary judgment against Southern Trust, the trial court reasoned as follows:

> [T]here is no genuine issue of material fact that the defendant Southern Trust Insurance Company denied that its policy provided liability coverage to its insured Jimmy Wilson concerning the accident involved herein; therefore, as a matter of law, based on its denial of coverage the defendant Southern Trust has waived any right to object to the fairness and reasonableness of the settlement amounts paid by the State Farm plaintiffs on behalf of the mutual insureds concerning the accident involved herein.

State Farm argues on appeal that, "by taking such [an] incorrect position and by strictly denying any liability coverage (defense or indemnity) to Jimmy Wilson, as a matter of law, the defendant Southern Trust cannot now object or question the settlements obtained by State Farm on behalf of the insured."

We reject this line of reasoning for several reasons. State Farm cites *Forrest Construction, Inc. v. Cincinnati Insurance Co.*, 728 F. Supp. 2d 955 (M.D. Tenn. 2010), a case in which the Cincinnati Insurance Company denied it had a duty to defend the insured and a state trial court awarded damages against the insured. *Id.* at 958. The federal district court held that the insurance company had a duty to defend and that the insured was entitled to recover costs and attorney fees incurred in the underlying action. *Id.* at 965-66. In the present case, by contrast, there is no dispute that State Farm was the primary insurer for both Tallent and Wilson pursuant to Tenn. Code Ann. § 56-7-1101(a). Thus, State Farm had a duty to defend in this case. *See Federated Mut. Ins. Co. v. Pa. Nat'l Mut. Ins. Co.*, 480 F. Supp. 599, 600 (E.D. Tenn. 1979).

Even if Southern Trust somehow breached a duty to defend, such a duty would extend only to claims against Tallent and claims against Wilson based on vicarious liability for the acts of Tallent. As we have previously concluded, Southern Trust was not the next insurance company in line regarding negligent entrustment claims against Wilson; thus, with respect to those claims, Southern Trust's position that it had no duty to indemnify or defend was not

incorrect.[5]  As to claims against Tallent, according to the affidavit of attorney Marcus, Southern Trust entered an appearance in the underlying lawsuit on Tallent's behalf and did not deny coverage or a duty to defend.  Furthermore, only one of the five underlying claims resulted in a lawsuit (the claim by Ms. Farner); with respect to the other four underlying claims, there appears to be no basis to assert that Southern Trust somehow waived its right to contest the reasonableness of the amounts paid in settlement.

We must conclude that the trial court erred in granting summary judgment in favor of State Farm and in finding that Southern Trust had waived its right to contest the reasonableness of the settlement amounts.

CONCLUSION

We reverse the judgment of the trial court and remand for further proceedings in accordance with this opinion.  Costs of this appeal are assessed against State Farm, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE

---

[5]Tennessee courts recognize a clear distinction between the duty to defend and the duty to indemnify. *See, e.g., Travelers Indem. Co. of Am. v. Moore & Assocs., Inc.*, 216 S.W.3d 302, 305 (Tenn. 2007).  There is no Tennessee law supporting the proposition urged by State Farm that denial of liability constitutes a waiver of the right to contest the reasonableness of amounts paid in settlement; it is the denial of the duty to defend that arguably results in such a waiver.  Cases from other jurisdictions cited by State Farm involved denial of the duty to defend.  *See, e.g., Safeco Ins. Co. of Am. v. Superior Court*, 44 Cal. Rptr. 3d 841, 845 (Cal. Ct. App. 2006); *Fla. Farm Bureau Mut. Ins. Co. v. Rice*, 393 So.2d 552, 556 (Fla. Dist. Ct. App. 1980).